DUNCAN, WARDEN *v.* HENRY

No. 94–941.   Decided January 23, 1995

PER CURIAM.

Respondent, a rector and dean of a church day school, was tried and convicted in state court of sexually molesting a 5-year-old student.   At trial, respondent objected to testimony by the parent of another child who claimed to have been molested 20 years previously.   His objection was based on Cal. Evid. Code Ann. §352 (West 1966).   On direct appeal, he pursued his evidentiary objection and requested the appellate court to find that the error was a "miscarriage of justice" under the California Constitution.   California ap-

plies this provision in determining whether or not an error was harmless. *People* v. *Watson*, 46 Cal. 2d 818, 299 P. 2d 243 (1956). The California Court of Appeal found the error harmless and affirmed respondent's conviction. *People* v. *Henry*, No. CR23041 (2d Dist. 1990), App. D to Pet. for Cert. 6.

. Respondent then filed a petition for writ of habeas corpus in federal court, alleging that the evidentiary error amounted to a denial of due process under the United States Constitution. The District Court granted the petition and the Court of Appeals for the Ninth Circuit affirmed. *Henry* v. *Estelle*, 33 F. 3d 1037 (1994). The court held that respondent had exhausted his state remedies even though he had not claimed a violation of any federal constitutional right in the state proceedings:

> "In his direct appeal in state court, Henry did not label his claim a federal due process violation; he argued rather that Hackett's testimony was erroneously admitted because irrelevant and inflammatory, and that its admission resulted in a 'miscarriage of justice' under the California Constitution. However, to state a federal due process claim it is not necessary to invoke 'the talismanic phrase "due process of law"' or cite 'book and verse on the federal constitution' . . . ." *Id.*, at 1040 (citations omitted).

In *Picard* v. *Connor*, 404 U. S. 270, 275 (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the pris-

oners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court. Accord, *Anderson* v. *Harless*, 459 U. S. 4 (1982).

*Picard* and *Harless* control the outcome in this case. Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment. The failure is especially pronounced in that respondent did specifically raise a due process objection before the state court based on a different claim—that the pleading was uncertain as to when the offense occurred. App. D to Pet. for Cert. 8. The California Court of Appeal analyzed the evidentiary error by asking whether its prejudicial effect outweighed its probative value, not whether it was so inflammatory as to prevent a fair trial. 33 F. 3d, at 1046. As recognized by dissenting Judge Brunetti, those standards are no more than "'somewhat similar,'" *id.*, at 1047, not "virtually identical" as claimed by JUSTICE STEVENS, *post*, at 369. Both *Picard* and *Harless* emphasized that mere similarity of claims is insufficient to exhaust. *Picard, supra*, at 276; *Harless, supra*, at 6. The state court, when presented with respondent's claim of error under the California Evidentiary Code, understandably confined its analysis to the application of state law.

Accordingly, the petition for a writ of certiorari is granted and the judgment of the Court of Appeals is

*Reversed.*

JUSTICE SOUTER, with whom JUSTICE GINSBURG and JUSTICE BREYER join, concurring in the judgment.

I concur in the judgment because respondent's "miscarriage of justice" claim in state court was reasonably under-

stood to raise a state-law issue of prejudice, not a federal issue of due process. Consequently, no federal claim was "fairly presented to the state courts" within the meaning of *Picard* v. *Connor*, 404 U. S. 270, 275 (1971).

JUSTICE STEVENS, dissenting.

Today's opinion sets forth a new rule of law that is a substantial departure from our precedents. In my opinion, it is unwise for the Court to announce a new rule without first hearing argument on the issue. The Court's opinion is especially distressing because it creates an exacting pleading requirement that serves no legitimate purpose in our habeas corpus jurisprudence.

In *Picard* v. *Connor*, 404 U. S. 270 (1971), after full briefing and argument, the Court issued an opinion carefully explaining the rule that a state prisoner must exhaust his state-court remedies before applying for a federal writ of habeas corpus. We held that the exhaustion requirement is satis-. fied when "the federal claim has been fairly presented to the state courts." *Id.*, at 275. We made it clear, however, that the prisoner need not place the correct label on his claim, or even cite the Federal Constitution, as long as the substance of the federal claim has been fairly presented.

As we explained: "Obviously there are instances in which 'the ultimate question for disposition,' *United States ex rel. Kemp* v. *Pate*, 359 F. 2d 749, 751 (CA7 1966), will be the same despite variations in the legal theory or factual allegations urged in its support. A ready example is a challenge to a confession predicated upon psychological as well as physical coercion." *Id.*, at 277. Thus, until today, prisoners have not been required to exhaust their federal claims "by citing 'book and verse on the federal constitution.'" *Id.*, at 278 (citation omitted). Rather, the rule has been simply that

they must present "the substance of a federal habeas corpus claim . . . to the state courts." *Ibid.*

Today the Court tightens the pleading screws by adding the requirement that the state courts "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Ante,* at 365–366. As support for that proposition the Court cites *Picard* and *Anderson* v. *Harless,* 459 U. S. 4 (1982), but neither case is in point. In the former, the Court pointed out that the claim asserted in state court—that an indictment was invalid under Massachusetts law—was different from the equal protection claim first raised in federal court; in the latter, the Court carefully explained why it concluded that the state-law basis for objecting to a jury instruction differed from the federal rule announced in *Sandstrom* v. *Montana,* 442 U. S. 510 (1979). While I disagreed with the view that Harless' federal claim had not been fairly presented to the state courts, see 459 U. S., at 9–12 (dissenting opinion), I surely did not understand the Court's opinion to hold that the exhaustion doctrine includes an exact labeling requirement.

Nor have the Courts of Appeals demonstrated any such understanding of *Harless* or *Picard.* To the contrary, the Circuits have analyzed the exhaustion question without rigidly insisting that a prisoner invoke the "talismanic" language of federal law. See *Tamapua* v. *Shimoda,* 796 F. 2d 261, 263 (CA9 1986); see also, *e. g., Hawkins* v. *West,* 706 F. 2d 437, 439–440 (CA2 1983); *Lesko* v. *Owens,* 881 F. 2d 44, 50 (CA3 1989), cert. denied, 493 U. S. 1036 (1990); *West* v. *Wright,* 931 F. 2d 262, 266 (CA4 1991), rev'd on other grounds, 505 U. S. 277 (1992); *Satter* v. *Leapley,* 977 F. 2d 1259, 1262 (CA8 1992); *Bowser* v. *Boggs,* 20 F. 3d 1060, 1063 (CA10), cert. denied, *post,* p. 926; *Nichols* v. *Sullivan,* 867 F. 2d 1250, 1252–1253 (CA10), cert. denied, 490 U. S. 1112

(1989); *Hutchins* v. *Wainwright,* 715 F. 2d 512, 518–519 (CA11 1983), cert. denied, 465 U. S. 1071 (1984).

The new rule the Court announces today is hypertechnical and unwise. It will prolong litigation without serving any valid purpose. The example of a challenge to a coerced confession cited in *Picard,* 404 U. S., at 277, illustrates the point. If a prisoner presents all his evidence to a state court, and if the standard for judging the voluntariness of a confession under state law is the same as under federal law, the state court has had a fair opportunity to pass on the claim regardless of whether the prisoner relies on both the State and Federal Constitutions or just the former. If the state courts have considered and rejected such a claim on state-law grounds, nothing is to be gained by requiring the prisoner to present the same claim under a different label to the same courts that have already found it insufficient. The cost of needless litigation is, however, significant both to the judicial system, see *Harless,* 459 U. S., at 8 (STEVENS, J., dissenting), and to persons like respondent who are imprisoned despite their meritorious federal claims.

In the case before us today, the Court of Appeals for the Ninth Circuit carefully analyzed the exhaustion issue. On the merits, respondent presented the Court of Appeals with a federal due process claim, the crux of which was that the testimony of Thomas Hackett, a witness for the prosecution, was so inflammatory and irrelevant as to render his trial fundamentally unfair. Cf. *Estelle* v. *McGuire,* 502 U. S. 62, 75 (1991) (severely prejudicial evidentiary errors may violate due process). Respondent had challenged the admission of Hackett's testimony on direct appeal in state court. 33 F. 3d 1037, 1040 (CA9 1994). To be sure, he had cited only state law. *Ibid.* As carefully explained by the Court of Appeals, however, the standards for addressing respondent's state-law claims were virtually identical to those applied in

federal court on habeas review. *Id.*, at 1041–1042. Thus, after full discussion of the issue, the Ninth Circuit concluded that respondent had exhausted his claims.[1]

---

[1] The contrast between the Ninth Circuit's thoughtful opinion and this Court's cursory disposition of an important issue is best illustrated by quoting the lower court's reasoning in full:

"To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts. *Picard v. Connor*, 404 U. S. 270, 277–78 . . . (1971). The purpose of this 'fair presentation' requirement is to 'provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.' *Anderson v. Harless*, 459 U. S. 4, 6 . . . (1982) (quoting *Picard*, 404 U. S. at 276–77 . . .). We have held that a federal claim 'is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based.' *Tamapua v. Shimoda*, 796 F. 2d 261, 262 (9th Cir. 1986).

"There is no doubt that Henry presented the 'operative facts' to the California court. The question is whether he presented the 'legal theory.' Henry's federal habeas claim is that the erroneous admission of evidence at his state criminal trial, followed by the jury instruction, violated his federal constitutional right to due process and was so prejudicial as to require reversal of the conviction. In his direct appeal in state court, Henry did not label his claim a federal due process violation; he argued rather that Hackett's testimony was erroneously admitted because irrelevant and inflammatory, and that its admission resulted in a 'miscarriage of justice' under the California Constitution. Cal. Const. art. VI, § 13. However, to state a federal due process claim it is not necessary to invoke 'the talismanic phrase "due process of law"' or cite 'book and verse on the federal constitution;' petitioner need only make 'essentially the same arguments' before the state and federal courts to exhaust a claim. *Tamapua*, 796 F. 2d at 262–63. Thus, under *Picard* and *Anderson*, exhaustion requires only that petitioner present 'the substance of the federal claim' in state court. *Id.* at 262. We find that Henry has done so, regarding both his argument that the erroneous admission of the testimony and the instructional error were a violation of his federal due process right and his argument that the error was so prejudicial as to warrant reversal.

"As to the first point, it is well established that denial of due process in a state criminal trial 'is the failure to observe that fundamental fairness essential to the very concept of justice. [The court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.' *Lisenba v.*

Judge Brunetti dissented from the majority's analysis, but on a ground that is entirely different from that advanced by this Court in what appears to be its hold-

*California,* 314 U. S. 219, 236 . . . (1941). Henry's federal due process claim is that the admission of Hackett's testimony, along with the instructions concerning it, deprived him of a fair trial. He argues that Hackett's testimony was not probative of any material issue in his case unless the jury assumed a fact about which it had heard no testimony: that Hackett's son's accusation was true. He further argues that the jury instructions encouraged the jury to make this impermissible, highly prejudicial assumption. His claim is thus that 'there are *no* permissible inferences the jury may draw' from Hackett's testimony, and that it is 'of such [inflammatory] quality as necessarily prevents a fair trial.' *Jammal v. Van de Kamp,* 926 F. 2d 918, 920 (9th Cir. 1991); *see also Estelle v. McGuire,* 502 U. S. 62, [70] . . . (1991) (inflammatory evidence that is irrelevant may work a due process violation).

"Henry made 'essentially the same arguments,' *Tamapua,* 796 F. 2d at 262, in his opening brief to the California Court of Appeal. He claimed that Hackett's testimony was 'not relevant—it had no tendency to prove or disprove any disputed fact that was of consequence to the determination of the action.' He added that the jury instruction 'compounded the error' because, in encouraging the jury to see Hackett's testimony as relevant, it 'as much as said that defendant had molested [Hackett's son] 20 years before.' The Court of Appeal agreed, and wrote in its disposition that Hackett's testimony, while 'inherently inflammatory,' had 'no probative value at all.'

"We reach the same conclusion as to the essential identity of Henry's state and federal arguments regarding the prejudicial effect of the error. Under California law, a miscarriage of justice is reversible only when 'it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error.' *Watson,* 299 P. 2d at 254. The federal standard, recently set forth by the Supreme Court in *Brecht v. Abrahamson,* [507 U. S. 619] (1993), is phrased somewhat differently, but is essentially the same test; the Supreme Court held that in reviewing a collateral challenge based on a 'trial-type' constitutional error, a federal court will not reverse the conviction unless the error '"had substantial and injurious effect or influence in determining the jury's verdict."' *Id.,* at 623 . . . (quoting *Kotteakos v. United States,* 328 U. S. 750, 776 . . . (1946)).

"The errors that occurred at Henry's trial—the introduction of Hackett's testimony and the subsequent jury instruction—were clearly errors of the

ing.[2]   He did not merely argue that there was no exhaustion because the prisoner had failed to cite the Federal Constitution.   Rather, he carefully explained his view that the federal claim differed from the state claim because it was governed by the harmless-error standard in *Chapman* v. *California*, 386 U. S. 18 (1967), rather than a California standard similar to *Brecht* v. *Abrahamson,* 507 U. S. 619 (1993).   I am inclined to believe that the majority had the better of the argument because the *Brecht* standard would apply in the federal habeas proceeding.   But the important point of the dissent is that, like the majority, it correctly perceived the exhaustion question as whether the claim had been fairly presented to the state courts, not whether respondent had attached the correct label.

---

'trial type' because they 'occurred during the presentation of the case to the jury.'   *Arizona v. Fulminante,* 499 U. S. 279, 307 . . . (1991).   Therefore, under the new *Brecht* harmless error standard, we must inquire whether the testimony had a 'substantial and injurious effect or influence' on the verdict.   This standard is similar to the *Watson* standard used by California courts; under both tests, reversal is required if the error had a significant inculpatory impact.   When the California Court of Appeal determined that it was not 'reasonably probable' that Henry would have been acquitted had the Hackett testimony not been introduced (the *Watson* standard), it effectively determined that the testimony had not had a 'substantial and injurious effect or influence' on the outcome (the *Brecht* standard).

"Henry has thus made 'essentially the same arguments' before the state and federal courts regarding both the existence of federal constitutional error and the prejudicial impact thereof.   We hold that he has exhausted his state post-conviction remedies."   33 F. 3d, at 1040–1042 (footnote omitted).

[2] At the end of its opinion, the Court seems to back away from any ironclad labeling requirement by endorsing Judge Brunetti's view that respondent's federal claim was different in important respects from the argument that was presented in state court.   If the Court seeks to reverse the Ninth Circuit on these grounds, without overruling the rule of *Harless* and *Picard,* much of the language in the Court's opinion is nothing more than unnecessary dicta.   The confusion on this critical point is itself a reason to avoid summary disposition of this case.

This Court should not abruptly terminate thoughtful debate among conscientious Circuit judges by summarily announcing a new rule. If we are to depart from the standard set forth in *Picard* and *Harless,* we should do so only after thorough consideration with the benefit of full briefing and argument. I respectfully dissent.