THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD W. STURGEON, Defendant-Appellant.

Fourth District   No. 4—93—0674

Opinion filed May 16, 1995.—Rehearing denied June 6, 1995.

STEIGMANN, J., specially concurring.

Dan Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Bruce Gammage, State's Attorney, of Clinton (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

In June 1991, a jury convicted defendant Ronald W. Sturgeon of first degree murder, and the trial court later sentenced him to 50 years in prison. Defendant appealed, challenging only his sentence, and in February 1992 this court affirmed. *People v. Sturgeon* (1992), 224 Ill. App. 3d 1113 (unpublished order under Supreme Court Rule 23).

In July 1992, defendant filed a *pro se* petition pursuant to section 2—1401 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401), seeking to vacate his conviction and sentence. After the State moved to dismiss, defendant obtained leave of court to file an amended section 2—1401 petition. In June 1993, the court conducted a hearing on the amended *pro se* petition, heard arguments from the parties (defendant appearing *pro se*), and denied it. In its written order, the court explained its denial as follows:

> "Defendant failed to show coercion, duress, mistake or ignorance of any material fact which was unknown [but discoverable] to defendant or his counsel at trial *** by the exercise of due diligence and [which would provide the basis upon] which the conviction would not have been entered."

Defendant appeals but does not challenge the trial court's rejection of his section 2—1401 petition on its merits. Instead, defendant argues that "[t]he trial court erred in considering [his] petition as it was styled rather than determining that the substance of the petition indicated that it was arguable under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.*)." For reasons we explain, we affirm.

We agree with defendant to the extent that he contends that the circuit court should have given some consideration to the provisions of the Act. Although that requirement is not readily apparent, we conclude that the decision in *People ex rel. Palmer v. Twomey* (1973), 53 Ill. 2d 479, 292 N.E.2d 379, from which the supreme court has never receded, the history behind the enactment of the Act, and an amendment to the Act creating section 122—2.1 of the Act (see Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—2.1) make that requirement when an uncounseled person seeks to attack his or her criminal conviction under section 2—1401 of the Code (writ of error *coram*

*nobis*) or section 10—101 of the Code (*habeas corpus*) (735 ILCS 5/10—101 (West 1992)).

■ Section 122—1 of the Act (725 ILCS 5/122—1 (West 1992)) explains that the Act concerns only claims of violations of constitutional rights and section 122—2.1(a)(2) of the Act permits a circuit court to summarily dismiss a petition filed under the Act which "is frivolous or *** patently without merit" (725 ILCS 5/122—2.1(a)(2) (West 1992)). Thus, we conclude that the consideration under the Act which a circuit court must give to a petition under section 2—1401 of the Code or a *habeas corpus* petition ends when the circuit court determines that the petition does not allege a violation of a constitutional right or that any such allegation "is frivolous or patently without merit."

■ Here, the petition made general allegations of violations of various of defendant's constitutional rights and recited the evidence at trial. The only specific claim defendant made was that he was under the influence of Valium when he testified. The record at trial, which was properly before the circuit court and is now before us, indicates that defendant's use of Valium at that time was discussed in his testimony. The record thus shows that this issue could not be used again under the Act. (*People v. Valadez* (1974), 17 Ill. App. 3d 499, 502, 308 N.E.2d 253, 254-55.) The petition was both "frivolous" and "patently without merit" as a matter of law. No relief could have been obtained under the Act. As no contention is made that the petition was otherwise sufficient under section 2—1401 of the Code, the circuit court properly dismissed the petition. See *People v. Berland* (1978), 74 Ill. 2d 286, 313-14, 385 N.E.2d 649, 661-62.

In *Twomey*, a person convicted of two counts of felony theft and sentenced to prison filed a *pro se* petition for a writ of *habeas corpus* (Ill. Rev. Stat. 1971, ch. 65, par. 22) alleging deprivation of his constitutional right to counsel at a preliminary hearing and arraignment. He also alleged that the indictment upon which he was convicted was defective. In addition, he filed a motion for leave to appeal as a poor person, supported by affidavit, alleging he could not afford counsel. Without responding to the motion, the circuit court struck the complaint upon the State's motion.

On appeal to the supreme court, the parties disputed whether the circuit court should have tendered the petitioner counsel before ruling upon his *habeas corpus* petition. The supreme court noted that the petitioner was no longer incarcerated and that the dismissal of the petition for writ of *habeas corpus* was not *res judicata*. Accordingly, the court affirmed but entered into a substantial discussion as to how the circuit court should have handled the petition.

The *Twomey* court first noted that in *People ex rel. Haven v. Macieiski* (1967), 38 Ill. 2d 396, 398, 231 N.E.2d 433, 434, and *People ex rel. Lewis v. Frye* (1969), 42 Ill. 2d 58, 60, 245 N.E.2d 483, 484-85, it had held that trial courts faced with *pro se* petitions for writs of *habeas corpus* could have treated the documents presented as petitions under the Act but were not required to do so. (*Twomey*, 53 Ill. 2d at 482-83, 292 N.E.2d at 381-82.) The court then decided that those decisions were "not in harmony" with its decision in *People v. Slaughter* (1968), 39 Ill. 2d 278, 235 N.E.2d 566, which "dealt with the question of the quality of representation required of counsel appointed to represent indigents in proceedings under the [Act]." *Twomey*, 53 Ill. 2d at 483, 292 N.E.2d at 381.

The *Twomey* opinion pointed out that the *Slaughter* opinion "first observed that the [Act] was intended to eliminate 'the Illinois merry-go-round of writ of error, *habeas corpus* and *coram nobis*' on which a [defendant] had often found himself when collaterally attacking his conviction on constitutional grounds." *Twomey*, 53 Ill. 2d at 483, 292 N.E.2d at 381-82, quoting *Slaughter*, 39 Ill. 2d at 284, 235 N.E.2d at 569.

The *Slaughter* court explained the background of the Act in these words:

"The available methods by which a judgment of conviction could be attacked in Illinois were writ of error, *habeas corpus*, and *coram nobis*. The Supreme Court of the United States was troubled, because no matter which method a prisoner pursued, he appeared always to be met by a claim that he should have pursued a different remedy. This situation prompted the concurring opinion of Mr. Justice Rutledge in *Marino v. Ragen*, in which he referred to 'the Illinois merry-go-round of writ of error, *habeas corpus*, and *coram nobis*.' (1947) 332 U.S. 561, 570, 92 L. Ed. 170, 68 S. Ct. 240.

Shortly after this decision, a joint committee of the Illinois and Chicago Bar Associations was established to deal with the problem. That committee submitted two rules to the Supreme Court of Illinois for adoption. One of them required that the entire proceeding on arraignment in a criminal case involving a felony be transcribed and made a part of the common-law record. The other rule provided a post-conviction remedy. Its provisions were substantially those of the present Post-Conviction Hearing Act. The first of these rules was promptly adopted by this court, and was known for many years as Rule 27A. (Ill. Rev. Stat. 1949, chap. 110, par. 259.27A.) The rule which provided a post-conviction remedy was held under advisement by the court for many months. Shortly after the court announced that it would not adopt the rule, the proposed post-conviction rule was converted into statu-

tory form and was enacted by the Illinois General Assembly. Ill. Rev. Stat. 1949, chap. 38, pars. 826—832." *Slaughter*, 39 Ill. 2d at 284, 235 N.E.2d at 569.

After the foregoing quoted language, the *Slaughter* court made the following statement as set forth in *Twomey*:

" 'The [Act] provides that counsel shall be appointed to represent indigent prisoners who request counsel, and it also provides that a petition may be amended or withdrawn. [Citation.] These provisions were included because it was anticipated that most of the petitions under the Act would be filed *pro se* by prisoners who had not had the aid of counsel in their preparation. To the end that the complaints of a prisoner with respect to the validity of his conviction might be adequately presented, the statute contemplated that the attorney appointed to represent an indigent petitioner would *** then amend the petition that had been filed *pro se*, so that it would adequately present the prisoner's constitutional contentions. The statute cannot perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court.' " *Twomey*, 53 Ill. 2d at 483-84, 292 N.E.2d at 382, quoting *Slaughter*, 39 Ill. 2d at 284-85, 235 N.E.2d at 569.

The *Twomey* court then stated:

"It is apparent that the same lack of legal knowledge which causes a prisoner to draft an inadequate post-conviction petition might result in his selecting the wrong method of collaterally attacking his conviction. A salutary result, consistent with the intent of the [Act] as expressed in *Slaughter*, would be achieved if the circuit court, upon finding that a *pro se* petition, however labeled, and however inartfully drawn, alleged violations of the petitioner's rights cognizable in a post-conviction proceeding, would thereafter, for all purposes, treat it as such. This practice would enable the issues to be properly framed and the matter adjudicated in one proceeding and with finality. We need not and do not reach the question of whether an indigent petitioner is entitled to appointment of counsel in a *habeas corpus* action in which no such violations are alleged." *Twomey*, 53 Ill. 2d at 484, 292 N.E.2d at 382.

Section 2—1401(a) of the Code provides, in part, that "[w]rits of error coram nobis *** are abolished" and that relief formerly available under that writ is obtainable under section 2—1401. (735 ILCS 5/2—1401(a) (West 1992).) Thus, just as at the times referred to in *Slaughter* and *Twomey*, we still have proceedings in the nature of *co-*

*ram nobis* and *habeas corpus* and writ of error has been replaced by appeal. (See Ill. Const. 1970, art. VI, §§ 4, 6.) The Supreme Court of Illinois has not receded from the decision in *Twomey*, which would indicate that circuit courts should continue to give the same treatment to uncounseled petitioners seeking section 2—1401 or *habeas corpus* relief from convictions. We note that fairly recently *Twomey* was followed by the Fifth District Appellate Court in *People v. Gandy* (1992), 227 Ill. App. 3d 112, 139, 591 N.E.2d 45, 64.

Enactment of section 122—2.1 of the Act, providing for summary dismissal of petitions brought under the Act which are clearly devoid of merit, created a significant change in regard to the operation of the Act. A reasonable argument can be made that by tightening the requirements of a petition for relief under the Act in order for the petitioner to receive further consideration after initial examination by a judge, the legislature indicated an intent to no longer require consideration by the court of possible application of the Act to *pro se, coram nobis* and *habeas corpus* petitions which allege violations of constitutional rights. However, we conclude that the more logical and better procedure to follow is to continue to require consideration by a judge of such a petition in regard to application of the Act but to also permit the judge to deal with possible claims of constitutional violation in those petitions in the summary manner permitted by section 122—2.1 of the Act.

We also recognize that in *Duncan v. Henry* (1995), 513 U.S. 364, 130 L. Ed. 2d 865, 115 S. Ct. 887, a *per curiam* decision, the United States Supreme Court has tightened the requirement by which a petitioner seeking a writ of *habeas corpus* in a Federal district court must have designated the relief he sought in State courts in order to show the necessary exhaustion of remedies. This is analogous to the legislative changes brought about by section 122—2.1 of the Act, which requires greater specificity with petitions to avoid summary dismissal. We do not deem it a strong precedent for totally disregarding the requirement of *Twomey* that uncounseled *coram nobis* and *habeas corpus* petitioners receive the scrutiny of a petition under the Act in regard to constitutional deprivation.

In summary we hold that here, the circuit court should have determined if defendant set forth a sufficient violation of a constitutional right to meet the requirements of section 122—2.1(a)(2) of the Act and, if so, and defendant was indigent, have given him an opportunity to have court-appointed counsel. However, since any claim of a constitutional violation was both "frivolous" and "patently

without merit" as a matter of law and the petition failed to meet the requirements for *coram nobis* relief, we affirm.

Affirmed.

COOK, J., concurs.

JUSTICE STEIGMANN, specially concurring:

Although I agree with the result the majority reached, I do not agree with its underlying analysis. Because of changes in the criminal law in the 22 years since the *Twomey* decision, I believe that the Supreme Court of Illinois would no longer adhere to that decision. I respectfully conclude, instead, that court would now require petitioners who seek collateral relief to specify—and correctly so—the particular kind of relief they are seeking and provide an adequate basis therefor.

The law in Illinois is clear that a section 2—1401 petition can appropriately be used to attack a criminal conviction. In *Berland* (74 Ill. 2d at 313-14, 385 N.E.2d at 661-62, quoting *Ephraim v. People* (1958), 13 Ill. 2d 456, 458, 150 N.E.2d 152, 153), the supreme court discussed proceedings brought under then-section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72), the precursor of section 2—1401 of the Code, and wrote the following: "A section 72 proceeding is the forum in which 'to correct all errors of fact occurring in the prosecution of a cause, unknown to the petitioner and court at the time of trial, which, if then known, would have prevented the judgment.' " In evaluating defendant's section 2—1401 petition on its merits in this case, the trial court correctly used the standards set forth in *Berland*.

Given that a section 2—1401 petition can be the basis upon which the trial court can provide relief from a conviction or sentence, defendant's position before this court essentially seems to be the following:

> "If I am entitled to relief under section 2—1401 of the Code, then the trial court should grant it. However, if I am not entitled to relief, but my petition contains claims that might arguably be cognizable under the Act, then the trial court must *sua sponte* transform my section 2—1401 petition into a post-conviction petition and treat it accordingly."

Although at first blush defendant's posture might appear strange, *Twomey* supports it, and the majority correctly cites the recent fifth district decision in *Gandy* as following *Twomey*. However, I believe *Twomey* is no longer good authority.

In 1983, the legislature added section 122—2.1 to the Act (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—2.1). That section (as cur-

rently amended) requires the trial court to examine a post-conviction petition within 90 days after its filing and docketing to determine whether it is frivolous or patently without merit. If the court determines that the petition is either, then the court shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law made in reaching its decision. (725 ILCS 5/122—2.1(a)(2) (West 1992).) Petitioners whose petitions are dismissed pursuant to section 122—2.1 of the Act do not receive the benefits of court-appointed counsel even if they request it and are indigent. See *People v. Lemons* (1993), 242 Ill. App. 3d 941, 944, 613 N.E.2d 1234, 1236.

In my judgment, the legislative policy which underlies section 122—2.1 of the Act—authorizing trial courts to dismiss frivolous or meritless post-conviction petitions without expending the time, effort, and expense of appointing counsel to represent the petitioner—is inconsistent with the policy the *Twomey* court attributed to the legislature with regard to the Act. I doubt in particular the concerns expressed in *Twomey* about a prisoner's drafting "an inadequate post-conviction petition [which] might result in his selecting the wrong method of collaterally attacking his conviction" due to lack of legal knowledge. (*Twomey*, 53 Ill. 2d at 484, 292 N.E.2d at 382.) I also have serious doubts regarding the *Twomey* court's concerns about appointing counsel in all cases in which post-conviction petitions were filed, no matter how "inartfully drawn" those petitions may be, in order to "enable the issues to be properly framed and the matter adjudicated in one proceeding and with finality." *Twomey*, 53 Ill. 2d at 484, 292 N.E.2d at 382.

The legislative policy underlying section 122—2.1 of the Act seeks to hold all post-conviction petitioners responsible for the adequacy of the claims they make. That section represents a legislative response to the frustration, expense, and bother which had resulted from the post-conviction petitions that have inundated the State's trial courts, frequently being filled with specious and spurious allegations.

For all of these reasons, I conclude that the supreme court would now hold that petitioners who seek collateral relief must correctly specify the particular kind of relief they are seeking and must provide an adequate basis therefor. Specifically, as in this case, if a petitioner files a section 2—1401 petition, it is neither the concern nor the duty of the trial court to search through it (typically, like the present case, consisting of multiple pages of legalistic ramblings) to determine whether the petitioner could possibly have stated a basis for proceeding under the Act.

Support for this conclusion exists in the recent *per curiam* decision of the United States Supreme Court in *Duncan*, wherein the Court considered whether the defendant on direct appeal through the California State courts sufficiently raised Federal constitutional claims for those claims to be cognizable in Federal courts on a petition for a writ of *habeas corpus*. The Court reversed the Federal district and appellate courts, which had granted *habeas corpus* relief, and explained as follows:

"If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. *If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law* guaranteed by the Fourteenth Amendment, *he must say so,* not only in federal court, but in state court." (Emphasis added.) (*Duncan,* 513 U.S. at 365-66, 130 L. Ed. 2d at 868, 115 S. Ct. at 888 (*per curiam*).)

Similarly, this court should now hold that if a defendant seeks relief under the Act, he must explicitly say so. (See *People v. Ground* (1994), 257 Ill. App. 3d 956, 959, 629 N.E.2d 783, 785 (defendant's demand for speedy trial must be clearly set forth in the heading of the pleading).) Terming his petition to the trial court a petition seeking some other collateral remedy does not suffice to bring it within the provisions of the Act, and the trial court should be under no obligation to *sua sponte* address it as if it had been brought under the Act.

The analysis stated in the majority would essentially require trial courts to review all prisoner pleadings, regardless of their designation, under the ambit of section 122—2.1(a)(2) of the Act, lest the time requirements thereof pass without notice. Surely this untoward burden on our already overloaded trial judges is misguided.