983 A.2d 1199

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**James W. VanDIVNER, Appellant.**

Supreme Court of Pennsylvania.

July 22, 2009.

Dianne H. Zerega, Esq., Zerega Law Offices, Uniontown, for James W. VanDivner, Appellant.

Susan Elizabeth Ritz, Esq., Fayette County Public Defender's Office, Uniontown, for James W. VanDivner, Appellant.

Amy Zapp, Esq., Office of the Attorney General, for Commonwealth of Pennsylvania, Appellee.

CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

*OPINION ON REARGUMENT*

Chief Justice CASTILLE.

On January 23, 2009, this Court affirmed appellant James W. VanDivner's conviction and judgment of sentence in this direct capital appeal. *Commonwealth v. VanDivner*, 599 Pa. 617, 962 A.2d 1170 (2009). Mr. Justice Baer filed a Concurring and Dissenting Opinion, which was joined by Mr. Justice McCaffery. Appellant filed an Application for Reargument ("Application") listing two reasons in support: (1) that this

Court erred in holding that the national consensus against executing mentally retarded persons recognized in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), does not apply to persons who, in appellant's view, are functionally indistinguishable from persons with mental retardation, or, in the alternative, that this Court erred in not finding that the Equal Protection Clause of the 14th Amendment requires equal treatment for mentally retarded persons with an age of onset before age 18 and those who, in appellant's view, are functionally indistinguishable from such persons; and (2) that this Court's statutory review of the penalty verdict for passion, prejudice or any other arbitrary factor, *see* 42 Pa.C.S. § 9711(h)(3)(i), overlooked that appellant proved two of the three diagnostic criteria for mental retardation to the trial court, which, appellant believes, established inherently mitigating evidence to which the jury failed to give mitigating effect. For the following reasons, we deny reargument.[1]

Appellant first claims that the Court misapprehended the U.S. Supreme Court's decision in *Atkins*. The Application entails a significant re-framing and expansion of the *Atkins* claim raised on appeal, however. In addition, appellant adds an entirely new sub-argument concerning equal protection, claiming that this Court's observation that "there is currently

1. "Reargument before an appellate court is not a matter of right, but of sound judicial discretion, and reargument will be allowed only when there are compelling reasons therefor." Pa.R.A.P. 2543. The Note to Rule 2543 offers the following guidance:

    The following, while neither controlling nor fully measuring the discretion of the court, indicate the character of the reasons which will be considered:

    (1) Where the decision is by a panel of the court and it appears that the decision may be inconsistent with a decision of a different panel of the same court on the same subject.

    (2) Where the court has overlooked or misapprehended a fact of record material to the outcome of the case.

    (3) Where the court has overlooked or misapprehended (as by misquotation of text or misstatement of result) a controlling or directly relevant authority.

    (4) Where a controlling or directly relevant authority relied upon by the court has been expressly reversed, modified, overruled or otherwise materially affected during the pendency of the matter sub judice, and no notice thereof was given to the court pursuant to Rule 2501(b) (change in status of authorities).

no prohibition on imposing the death penalty on a defendant who is mentally deficient but not mentally retarded," *VanDivner*, 962 A.2d at 1189, "is itself constitutionally problematic." Application at 6. Appellant argues that denying legal protections to an individual who is functionally indistinguishable from others to whom those protections are afforded violates equal protection. In appellant's view, "it is 'downright irrational' to subject him to a criminal sanction that cannot be imposed upon a functionally indistinguishable offender who has mental retardation." *Id.* at 7 (citing *Hudson v. United States*, 522 U.S. 93, 103, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)).

■ To the extent appellant seeks reargument of the *Atkins* issue he actually litigated before the Court, the issue was fully aired in the Majority Opinion and the Concurring and Dissenting Opinion, and no further review is warranted. Appellant did not forward an equal protection argument in his brief on direct appeal. To the extent appellant recasts or supplements the argument he actually made on appeal by, for example, adding the new equal protection claim, the argument is waived and an inappropriate subject of reargument.

■ Appellant's second claim poses that, in our independent statutory review of the record for passion, prejudice or other arbitrary factors respecting the death sentence imposed, this Court "overlooked" an inconsistency in the record that, appellant now claims for the first time, establishes that his death sentence was arbitrary. Specifically, appellant claims that, in a pre-trial *Atkins* hearing addressing whether he was eligible for a death sentence given his level of intellectual functioning, the lower court found as a fact that he had a full scale I.Q. level of 61–71 which, he argues, is within the range of intellectual functioning consistent with mental retardation. Appellant asserts that this pre-trial ruling "was also a binding factual finding" upon the jury, which established inherently mitigating evidence, yet the jury failed to give mitigating effect to the evidence.

Appellant was free to make this argument in his appellate brief, but did not, and this Court did not discuss any such claim on its own; thus the claim presumptively is waived for purposes of reargument. Appellant nevertheless poses a novel theory of issue preservation, tied to this Court's statutory review of capital sentences on direct appeal, which we will discuss below. In order to understand the operation of the issue preservation theory, it is first necessary to examine the claim. Examination of the record for that purpose, however, unfortunately reveals that counsel has flatly misrepresented the relevant facts to this Court.

Appellant's current argument is bottomed upon two factual assertions: first, that the trial court made a binding factual finding in his favor; and second, that the jury failed to honor that binding determination, which implies that the jury was asked or told to honor the finding. Neither assertion is supported by the record.

First, the trial court did not make any pre-trial finding regarding appellant's I.Q. level. In its Opinion and Order of January 24, 2007, the trial court correctly noted that, to prove that he was mentally retarded, appellant was required to establish three points: limited intellectual function (an I.Q. level of approximately 70 or below), significant adaptive limitations, and onset before age eighteen. *See Commonwealth v. Miller*, 585 Pa. 144, 888 A.2d 624, 630 (2005). But the court then specifically declined to make any finding regarding appellant's allegations of limited intellectual function or adaptive limitations:

> After a careful review of the testimony and evidence introduced at four pre-trial hearings, it is our determination that the Defendant has failed to meet his burden as to the "age of onset" element of mental retardation under both the [American Association of Mental Retardation] definition and the [American Psychiatric Association] definition. Therefore, we dispose of the Defendant's petition on this basis alone and **decline to make a determination of whether the first two elements have been established.**

Trial Ct. Op., 1/24/07, at 8 (emphasis added). Thus, appellant misrepresents the record in arguing to this Court, for the first time upon reargument, that the trial court made a "binding factual finding" respecting his supposed I.Q. level. Clearly, the trial court made no finding at all.

Second, appellant neither argued to the jury, nor asked that the jury be instructed, that it was obliged to give mitigating effect to the alleged (but in fact non-existent) "binding factual finding" respecting appellant's I.Q. level, such that the jury's "failure" to give that effect triggers a viable claim of trial court error, much less a claim implicating statutory review of the penalty. Notably, in so attacking the jury's weighing process, appellant never accounts for the manner in which the case was actually presented to the jury, but instead, confines himself to his misrepresentation of the pre-trial proceeding.

At trial, appellant never argued to the trial court that it had made a binding pre-trial determination respecting any mitigating circumstance, much less did he argue that the jury should be instructed that it was bound by that finding in weighing mitigation evidence. Instead, the record reflects that appellant's expert testified and described appellant's I.Q. level as "borderline mentally retarded," in the "upper limit or mildly mentally retarded, lower limit of normal," and "at the borderline between mildly mentally retarded and low normal I.Q." Notes of Testimony, 2/12/07, at 119, 120, 138. In her closing to the sentencing jury, appellant's penalty phase counsel referred in passing to "his mental abilities, his organic brain damage," and his "mental limitations." *Id.* at 170, 173, 175, 888 A.2d 624. Counsel then argued two mitigating circumstances to the sentencing jury: (1) that appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and (2) appellant's background and character, including his mental impairment and organic brain damage. Counsel did not argue to the jury that the trial judge had made a finding that bound the jury respecting part of the diagnostic criteria for mental retardation; counsel requested no charge to that effect; and counsel did not object to the absence of any such

charge. In delineating for the jury the mitigating circumstances presented by appellant, the trial court stated that appellant was pursuing the catchall mitigator and then listed, among the factors that the jury could consider, appellant's alleged mental impairment and organic brain damage. *See id.* at 182, 888 A.2d 624. Thus, evidence and argument arising from appellant's claim of mental impairment was placed before the jury, but it was not remotely the issue appellant now claims was presented to, and wrongly ignored by, the jury.

Current counsel uses strong words to condemn the jury, alleging that it acted "arbitrarily," in "clear derogation of the jury's statutory and constitutional obligation to consider and give effect to relevant mitigating evidence that had been proven by the defense." Application at 9. Appellant further declares that the jury's "failure to find and weigh the inherently mitigating evidence of Appellant's impaired mental functioning clearly violated the Eighth Amendment." *Id.* at 10. But, in fact, the only derogation of duty here involves counsel's present misrepresentation of the record to this Court. The blatant, multiple material misrepresentations of the record that undergird the instant Application are beyond distressing. Perhaps even more inexplicable is the fact that counsel on reargument, who did not sign the direct appeal brief, in fact represented appellant at the penalty phase, and so she should be well aware of what actually occurred at that proceeding. For counsel to then re-enter the case and sign a pleading on reargument that seeks to present an entirely new issue, but is premised upon "facts" invented from whole cloth, is beyond the pale. Counsel should be mindful of her ethical duties, including her duty of candor toward the tribunal, which prohibits an attorney from knowingly making a false statement of material fact. Pa.R.P.C. 3.3(a)(1).

We turn now to appellant's claim that this penalty phase issue is available on reargument, even though the claim was never raised in his direct appeal brief. Appellant argues that this Court erred in "overlooking" his claim when conducting our statutory review of the record, and that the claim is "not capable of waiver" under Pennsylvania law, given our statuto-

ry review of death sentences. Specifically, appellant argues that this Court's statutory review obliges the Court "to address all constitutional issues the Court perceives as present, whether or not raised on appeal by the defendant." Application at 7 n. 1. Appellant thus suggests that this Court's statutory review of a death sentence impliedly exhausts all penalty-related constitutional claims, irrespective of whether the claims were argued to the Court or were discussed in the Court's decision; and if we "overlook" such a claim, he can pursue it for the first time upon reargument. We reject this novel theory.

The statutory review encompassed by Section 9711(h)(3)(i) authorizes this Court to identify and raise claims concerning a death sentence that we perceive from our review of the record, in narrow circumstances where it appears that the sentence of death is a "product of passion, prejudice or an arbitrary factor." Not all claims of error, or even all claims of constitutional error, implicate passion, prejudice, or arbitrariness. (Appellant's claim that the statute authorizes review of "all constitutional errors" ignores the statutory language.) Appellant cites to no authority from this Court, or from any other source, that remotely suggests that the claim he has belatedly identified implicates the statutory standard. Merely labeling a waived claim as one implicating the standard, as appellant does, does not make it so. Nothing in the statute, this Court's practices, or this Court's precedent suggests that our statutory review of death sentences for passion, prejudice or arbitrariness operates as an obligation to discover and raise any and all possible new defense claims and constitutional theories, such that a claim of *sub silentio* appellate court decision and "error" becomes available on reargument.

In *Bronshtein v. Horn,* 404 F.3d 700 (3d Cir.2005), then-Third Circuit Judge, now U.S. Supreme Court Justice Samuel A. Alito, addressed a similar claim forwarded on federal habeas corpus review by a Pennsylvania capital defendant in an attempt to avoid the federal habeas exhaustion requirement. Similarly to appellant here, Bronshtein argued that he had exhausted certain penalty phase claims in state court,

even though he never actually raised them to this Court and we never passed upon them, via operation of our statutory review of the penalty under Section 9711(h)(3)(i). In rejecting this implied or automatic exhaustion theory, Justice Alito first noted that:

[A] federal court is allowed under 28 U.S.C. § 2254(b)(1)(A) to grant a state prisoner's habeas petition only if the petitioner has exhausted all available state remedies. In order to satisfy the exhaustion requirement, a federal habeas claim must have been "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). This means that a petitioner must "present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999). "It is not enough that all the facts necessary to support the federal claim were before the state courts," *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), and "mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

*Bronshtein*, 404 F.3d at 725–26.

Justice Alito then rejected Bronshtein's automatic exhaustion argument with the following, thorough analysis:

First, neither 42 Pa. Cons.Stat. § 9711(h)(3)(i) nor any other Pennsylvania statute states that the Pennsylvania Supreme Court is expected to try to identify and then assess every "record-based" federal constitutional argument that might possibly be made on behalf a capital defendant. Instead, 42 Pa. Cons.Stat. § 9711(h)(3)(i) imposes a much more limited, albeit important, obligation, i.e., to make sure that no death sentence is "the product of passion, prejudice or any other arbitrary factor."

Second, we see no evidence that the Pennsylvania Supreme Court believes that it is required to engage in, or that it in fact engages in, the sort of boundless inquiry that Bronshtein thinks is required. *See Commonwealth v. Pao-*

*lello,* 542 Pa. 47, 665 A.2d 439, 454 n. 12 (1995) ("[W]e decline counsel's invitation to scour the record for additional errors caused by counsel and *sua sponte* raise said issues; the request is inappropriate and nonsensical in that such advocacy would be beyond the scope of our appellate review.") The state supreme court's opinion on direct appeal in this case is illustrative. The state supreme court did not address any federal constitutional issue that Bronshtein did not raise; nor did the state supreme court address the question whether Bronshtein's state-law arguments would have merit if recast in federal constitutional terms. It seems fanciful to suggest that, in every capital appeal, the state supreme court actually considers and rejects a host of federal constitutional claims without receiving briefing or argument on those claims from counsel and without even mentioning in the opinion of the court that the claims were entertained.

Third, Bronshtein's argument is inconsistent with Pennsylvania's scheme of post-conviction review. Under the PCRA, a petitioner may not obtain relief on a claim that was "previously litigated," 42 Pa. Cons.Stat. Ann. § 9543(a)(3), and a claim is viewed as having been "previously litigated" if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa. Cons.Stat. Ann. § 9544. Thus, if a Pennsylvania Supreme Court decision affirming a capital conviction and sentence on direct review is deemed to signify that the Court considered and rejected every possible federal constitutional argument that could be made based on the record, it would follow that no such claims could ever be asserted under the PCRA. *See Holland v. Horn,* 150 F.Supp.2d 706, 720–21 (E.D.Pa.2001); *Banks v. Horn,* 49 F.Supp.2d 400, 406–07 (M.D.Pa.1999). We are convinced that the Pennsylvania Legislature did not intend such a result.

Fourth, Bronshtein's argument would frustrate important aspects of the federal habeas scheme. Under the federal habeas statute, an applicant for federal habeas relief must

show that "**the applicant** has exhausted" all available state remedies. 28 U.S.C. § 2254(b)(1)(A) (emphasis added). In addition, a state is not "deemed to have waived the exhaustion requirement" unless it "expressly" does so, 28 U.S.C. § 2254(b)(3), and a federal habeas court's scope of review varies greatly depending on whether a particular claim was or was not "adjudicated on the merits" in the state courts. *See* 28 U.S.C. § 2254(d). Under Bronshtein's argument, however, the fiction that the state supreme court on direct review automatically considers all possible "record-based" arguments (and tacitly rejects all those that it does not expressly endorse) essentially does away with these aspects of the federal habeas scheme. The exhaustion requirement is rendered meaningless since all possible claims are deemed to be exhausted on direct review. Moreover, because an affirmance on direct review is deemed to constitute an adjudication on the merits of all possible record-based claims, it would seem to follow that all such claims are subject to the narrow scope of federal habeas review set out in 28 U.S.C. § 2254(d) regardless of whether the state supreme court in fact ever considered those claims.

*Bronshtein,* 404 F.3d at 726–27; *see also Nara v. Frank,* 488 F.3d 187 (3d Cir.2007).

■■ Appellant's theory of reargument issue preservation here is materially identical to the implied or automatic exhaustion argument advanced and rejected in *Bronshtein*—*i.e.,* it assumes that our review of the record for passion, prejudice or any other arbitrary factor negates a capital defendant's obligation to actually raise a constitutional issue on appeal. But Justice Alito's understanding of our review obligation under the death penalty statute comports with our understanding. This Court does not silently pass upon, and thereby impliedly preserve, decide or exhaust, claims in capital cases never argued to it or never discussed in our opinions. Our statutory review obligation does not prevent or discourage capital defendants from raising statutory review claims affirmatively. Moreover, generally speaking, statutory review does not re-

lieve capital defendants of the obligation to affirmatively raise their claims on direct appeal.[2]

■■ Finally, the very nature of the claim appellant poses here would not properly implicate statutory penalty review because appellant erroneously assumes that this Court may look behind the jury's weighing process. In *Commonwealth v. Reyes*, 963 A.2d 436 (Pa.2009), this Court explained the limits of this sort of review:

There is no legal mechanism by which a sentence of death may be overturned by this Court on the basis of an improper weighing of aggravating circumstances and mitigating circumstances because our authority to vacate a death sentence is circumscribed by the death penalty statute, specifically 42 Pa.C.S. [§ ] 9711(h)(3), which provides:

(h) REVIEW OF DEATH SENTENCE.—

\* \* \*

(3) The Supreme Court shall affirm the sentence of death unless it determines that:

(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or

(ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d).

This restriction on our authority has caused this Court to reiterate many times that it is exclusively the function of the jury in the first instance to decide whether aggravating and mitigating circumstances exist and then whether the aggravating circumstances outweigh any mitigating circumstances. In *Commonwealth v. Dennis Miller*, 555 Pa. 354, 724 A.2d 895 (1999), *cert. denied*, 528 U.S. 903, 120 S.Ct. 242, 145 L.Ed.2d 204 (1999), this Court wrote:

2. For purposes of decision here, we need not determine whether a reargument claim premised upon a specific, record-based factor which this Court's precedent had already recognized as implicating statutory review would be barred for failure to brief it on appeal *See Commonwealth v. Ogrod*, 578 Pa. 167, 850 A.2d 614 (2004) (*per curiam* denial of reargument); *see also id.* at 615–16 (Saylor, J., joined by Cappy, C.J., and Nigro, J., dissenting) (explaining why otherwise-waived claim implicated statutory review). The denial of reargument in *Ogrod* resulted by operation of law, as the Court was divided 3–3.

The weighing of aggravating and mitigating circumstances is a subjective process, not merely a quantitative procedure. Consequently, this task is the sole prerogative of the sentencing authority, which may assign determinative weight to a particular circumstance or circumstances.

724 A.2d at 902 (internal citations omitted). Consequently, the weighing process is "exclusively" a question for the factfinder, be it a court or jury. *Commonwealth v. Moser,* 519 Pa. 441, 549 A.2d 76 (1988). *See also Commonwealth v. Kenneth Miller,* 572 Pa. 623, 819 A.2d 504, 518 (2002); *Commonwealth v. Brown,* 538 Pa. 410, 648 A.2d 1177, 1186 (1994).

*Reyes,* 963 A.2d at 441. The *Reyes* Court also found that "[t]he fact that the jury concluded that the aggravating circumstance outweighed any mitigating circumstances does not render its verdict the 'product of passion, prejudice or any other arbitrary factor.' " *Id.* at 442. Thus, even if there were a factual predicate for appellant's claim on reargument (there is not), the fact that appellant's jury found that his two aggravating circumstances outweighed the mitigation evidence in this case does not mean that the jury's verdict was based upon passion, prejudice or any other arbitrary factor.

The Application for Reargument is denied.

Justice SAYLOR and EAKIN, Justice TODD, Justice McCAFFERY and Justice GREENSPAN join this opinion.

Justice BAER files a Concurring Opinion.

Justice BAER, concurring.

I join in full the Chief Justice's astute legal analysis of the presented issues. I very respectfully disassociate myself from what I perceive as personal harsh criticism of counsel as I believe this Court should lead in promoting civility in our great profession.