Charles H. KEATING, Jr., Petitioner,

v.

Robert HOOD, Warden of Federal Correctional Institute at Tucson, Arizona, and Daniel Lundgren, Attorney General of the State of California, Respondents.

No. CV 95–5151 JGD (RNBx.)

United States District Court,
C.D. California,
Western Division.

April 3, 1996.

---

Jeffrey S. Powell, Kirkland & Ellis, Chicago, IL, Stephen C. Neal, Cooley Godward Castro Huddleson & Tatum, Palo Alto, CA, for Charles H. Keating, Jr.

Sanjay T. Kumar, Deputy Atty. Gen., John R. Gorey, California Atty. General Office, Los Angeles, CA, for Robert Hood and California Atty. Gen.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

DAVIES, District Judge.

On August 3, 1995, Charles H. Keating, Jr., filed the instant Petition for Writ of Habeas Corpus. On August 9, 1995, Magistrate Judge Robert N. Block issued an order directing the State of California to file an Answer to the petition within forty-five days and to lodge with the Court all records bearing on Keating's exhaustion of state remedies and the merits of the petition. On September 21, 1995, the State filed an Answer that addressed only the issue of exhaustion of state remedies. Keating filed a Traverse on October 11, 1995. On October 16, 1995, Magistrate Judge Block issued a Report and Recommendation finding that Keating failed to exhaust state remedies. Local Rule 3.2.09 of the Local Rules Governing Magistrates provides that a petitioner in custody may file

objections to the Report and Recommendation within twenty days of filing of the Report and Recommendation. No objections were filed within the twenty-day period. The Court adopted the Magistrate Judge's Report and Recommendation on December 15, 1995, and judgment was entered on that same date.

On January 23, 1996, Keating filed an ex parte application to stay judgment on his petition for a writ of habeas corpus and to extend time to file objections to the Report and Recommendation. Keating claimed that he did not receive notice of the Report and Recommendation until January 12, 1996. As a result, he failed to file objections within twenty days. Keating also claimed that he did not receive notice of the judgment until January 12, 1996. The Court granted the ex parte application on January 24, 1996. Keating filed objections to the Magistrate Judge's Report and Recommendation on February 15, 1996.

On February 1, 1996, Keating filed an ex parte application requesting an order directing the State of California to file a memorandum on the merits of Keating's petition on or before a date certain. The Court granted the application and directed the State of California to file a memorandum on the merits on or before February 26, 1996. The State filed a Brief on the Merits on February 26, 1996. Keating filed a Reply Memorandum in Support of Petition for Writ of Habeas Corpus on March 4, 1996. The petition came on for hearing on April 1, 1996.

*Factual and Procedural Background*

American Continental Corporation ("ACC") was founded in 1969 as a subsidiary of American Financial Corporation, and until 1976, was primarily a residential home builder. Keating's Opening Brief in Support of Petition for Review ("Opening Br."), Exh. E, at 6, Answer; *People v. Keating*, 19 Cal. Rptr.2d 899, 902 (Cal.App. 2 Dist.1993). In late 1976, Keating and others purchased control of ACC. *Id.* New management focused ACC's homebuilding operations on fewer markets and diversified ACC's operations by establishing a mortgage banking company, expanding land development and home build-

ing capabilities, commencing broader commercial real estate activities, and initiating insurance services. *Id.*

On October 18, 1983, ACC applied to the California Department of Savings and Loan and to the Federal Home Loan Bank Board for approval to acquire Lincoln Savings and Loan Association ("Lincoln"). Opening Br., at 7; *Keating*, 19 Cal.Rptr.2d at 902. Both agencies approved the acquisition on February 21, 1984. *Id.* In late 1986, ACC began issuing subordinated debentures and selling them through Lincoln branches. Opening Br., at 7; *Keating*, 19 Cal.Rptr.2d at 903. Lincoln selected some of its employees to become ACC representatives. *Keating*, 19 Cal.Rptr.2d at 903. Lincoln also leased an area of 110 square feet in each office to ACC. Opening Br., at 8; *Keating*, 19 Cal.Rptr.2d at 903. ACC representatives negotiated the bonds from a separately designated desk within each branch. *Keating*, 19 Cal.Rptr.2d at 903. ACC bonds were sold at the Lincoln branches from late 1986 until February 1989. Opening Br., at 9; *Keating*, 19 Cal.Rptr.2d at 906. On April 13, 1989, ACC filed for protection under Chapter 11 of the United States Bankruptcy Code. *Id.* The next day, the federal government placed Lincoln into conservatorship. *Keating*, 19 Cal.Rptr.2d at 906.

In a 46–count second-amended indictment, the Grand Jury of the County of Los Angeles accused Keating and three others of numerous violations of the California Corporations Code. The district attorney alleged that the violations had occurred, and the second-amended indictment was filed in the Superior Court of the State of California for the County of Los Angeles on November 19, 1990. *Id.* at 901. Specifically, the indictment alleged twenty counts of sales of securities by means of false statements or omissions, in violation of sections 25401 and 25540; twenty counts of sales of securities without qualification, in violation of sections 25110 and 25540; three counts of making false statements to the corporations commissioner, in violation of sections 25166 and 25540; and three counts of failing to file advertising with the corporations commissioner before use, in violation of sections 25300 and 25540. The indictment

further alleged that the statute of limitations had been tolled, within the meaning of California Penal Code section 803, as to the violations in counts 3, 5, 10, 17 through 19, 23, 25, 30, 32, 37 through 39, and 41 through 46. *Id.*

Keating pleaded not guilty to the second-amended indictment on January 11, 1991. *Id.* Counts 1, 19, and 21 through 46 were dismissed either at the prosecution's request or upon the grant of Keating's motion pursuant to California Penal Code section 995. The court denied a motion by Keating to set aside the indictment, and granted a motion by Keating for severance from the co-defendants. *Id.*

On August 6, 1991, the matter proceeded to a trial by jury on the remaining eighteen counts. *Id.* A motion by Keating for judgment of acquittal pursuant to California Penal Code section 1118.1 was denied. On December 4, 1991, the jury returned its verdict. Keating was found not guilty as to count 7, and guilty as charged in counts 2 through 6, 8 through 18, and 20, all violations of California Corporations Code sections 25401 and 25540. The jury further found the statute of limitations had been tolled as to counts 3, 5, 10, 17, and 18. The court denied a motion by Keating for a new trial. *Id.*

Keating was found guilty in each of the counts alleging that misstatements and/or omissions were made to a particular investor in connection with his or her purchase of ACC bonds. *See id.* at 901. An opinion by the California Court of Appeal indicates that the State's case was based primarily therefore on the investors' testimony regarding what they were told or not told when they purchased the bonds from ACC representatives. *Id.* at 906–16. The evidence at trial established that Keating never personally sold any security to any of the individual investors. *Id.* at 920.

On April 10, 1992, the court sentenced Keating to ten years in state prison and imposed a maximum fine of $250,000. *Id.* at 901. Keating filed a timely notice of appeal on April 23, 1992. *Id.* at 902.

The California Court of Appeal, Second Appellate District, Division One, affirmed the conviction on June 3, 1993. *Id.* at 924. On September 30, 1993, the California Supreme Court granted Keating's petition for review of the conviction. *People v. Keating,* 23 Cal. Rptr.2d 593, 859 P.2d 673 (Cal.1993). Subsequently, on March 23, 1995, however, the State Supreme Court changed its position and dismissed the petition for review. *People v. Keating,* 39 Cal.Rptr.2d 410, 890 P.2d 1119 (Cal.1995). Keating then filed his Petition for Writ of Habeas Corpus in this Court.

### Discussion

### I. The Direct Perpetrator Jury Instruction

Keating contends that the jury instructions violated his rights to due process because they permitted the jury to convict him without finding mens rea. The jury was instructed that Keating could be convicted for violating California Corporations Code sections 25401 and 25540 as either a direct perpetrator or as an aider and abettor. Section 25401 provides:

> It is unlawful for any person to offer or sell a security in this state or buy a security in this state by means of any written or oral communications which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

California Corporations Code Section 25540(b) criminalizes a violation of section 25401.

The trial court instructed the jury that criminal liability as a direct perpetrator could be found as follows:

> In order to prove [a violation of sections 25401 and 25540], each of the following elements must be proved:
>
> (1) The defendant willfully sold or offered to sell a security in the State of California;
>
> (2) by means of any written or oral communication which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements made, in light of the cir-

cumstances under which they were made, not misleading.

\*　　\*　　\*　　\*　　\*　　\*

The term "offer" or "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value.

The term "sale" or "sell" includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value.

Exh. A, at 31–33, Petition for Writ of Habeas Corpus (hereinafter "Pet."). The jury was further instructed that it need not find that the defendant possessed a criminal intent in order to find his actions were willful. This instruction provided:

The word "willfully" when applied to the intent which an act is done or omitted means with a purpose or willingness to commit the act or make the omission in question. The word "willfully" does not require any intent to violate the law or to injure another or to acquire any advantage.

Exh. A, at 34–35, Pet.

Keating contends that this direct perpetrator instruction violated his due process rights in two ways. First, it permitted his conviction to be based on a non-existent and erroneous legal theory, and secondly, it permitted his conviction to be based on a strict liability offense joined unconstitutionally with a severe prison sentence.

### A. Non–Existent and Erroneous Legal Theory

■ Keating contends that he was convicted based on a non-existent and erroneous legal theory because a criminal violation of section 25401 requires a finding of mens rea. Keating is correct. The California Supreme Court recently held that a criminal violation of section 25401 is not a strict liability offense because mens rea is a required element. *People v. Simon,* 9 Cal.4th 493, 37 Cal. Rptr.2d 278, 886 P.2d 1271 (1995) (en banc). In *Simon,* the Supreme Court reversed the defendant's conviction for violations of section 25401, and held that the trial court erred in instructing the jury that a violation of

sections 25401 and 25540 was a strict liability offense for which mens rea need not be proven. The Supreme Court held that sections 25401 and 25540 create a criminal offense that requires "either (1) knowledge of the false or misleading nature of a representation or of the materiality of an omission, or (2) criminal negligence in failing to acquire such knowledge." 9 Cal.4th at 497, 37 Cal. Rptr.2d at 280, 886 P.2d at 1273. Thus, the jury instruction in the Keating trial erroneously failed to include the element of mens rea.

Keating is also correct that the erroneous instruction violated his due process rights. "Failure to instruct on such an essential element as intent or knowledge requires reversal because the 'Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *United States v. Laughlin,* 26 F.3d 1523, 1527 (10th Cir.1994) (*quoting In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)), *cert. denied,* —— U.S. ——, 115 S.Ct. 428, 130 L.Ed.2d 342 (1994); *see also Cole v. Young,* 817 F.2d 412, 424 n. 8 (7th Cir.1987) ("Indeed every federal court to consider the question since the Court decided *In re Winship* ... has agreed that a conviction procured without any jury instruction on an essential element of the offense is constitutionally invalid.").

The Attorney General contends that Keating was not convicted based on the direct perpetrator instruction because there was no evidence to support it. Instead, the State argues, he was convicted as an aider and abettor. Thus, any error in the direct perpetrator instruction did not violate Keating's due process rights. The State further contends that the mens rea element was satisfied because it was contained in the aiding and abetting instruction, which required a finding that Keating knew the bond sellers were making false statements or omissions of material facts regarding the bond transactions. Br. on Merits, at 6–7, 10.

The State's argument fails for several reasons. First, as will be later discussed, the aiding and abetting instruction is also constitutionally defective.

■ Second, a conviction must be vacated if an errant instruction leaves the jury with the option of relying on a legally inadequate theory. *United States v. Lewis,* 67 F.3d 225, 234 n. 15 (9th Cir.1995); *United States v. Barona,* 56 F.3d 1087, 1098 (9th Cir.1995) ("Where the jury is presented with a legally inadequate theory, as opposed to a factually inadequate theory, *Yates* requires that the conviction be vacated and the case retried as to that charge.") (*citing Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)), *cert. denied,* —— U.S. ——, 116 S.Ct. 813, 133 L.Ed.2d 759 (1996). In *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), the Supreme Court clarified the rationale for the distinction between a verdict based possibly on a legally inadequate instruction and a verdict based possibly on insufficient evidence:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence.

502 U.S. at 59, 112 S.Ct. at 474 (citations omitted). Thus, "a jury verdict is valid if sufficient evidence supports one of the grounds for conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but merely unsupported by the evidence." *United States v. Mari,* 47 F.3d 782, 786 (6th Cir.1995) (*citing Griffin*), *cert. denied,* —— U.S. ——, 115 S.Ct. 2626, 132 L.Ed.2d 867 (1995). Here, the direct perpetrator instruction is legally defective. Moreover, as will be discussed, the aiding and abetting instruction, which is the alternative theory of liability, is also legally defective.

Third, the government's argument fails because its position appears unsupported by the law. The State apparently contends that, because it failed to offer evidence in support of its proffered theory of direct perpetrator liability, which is also legally defective, the conviction should be upheld. The Attorney General fails to cite any authority for this proposition. Under this theory, the conviction would be reversible only if the State had attempted to meet its burden by offering evidence in support of a finding of direct perpetrator liability. This argument, that Keating's conviction should stand because the State totally failed to prove one of its theories of liability, "produc[es] an odd system in which the greater failure of proof is rewarded." *Griffin,* 502 U.S. at 58, 112 S.Ct. at 474.

Finally, the issue of whether there is sufficient evidence in the record is arguable because the State's own assertions at trial indicate that there was evidence for the jury to find that Keating was a direct perpetrator. For instance, the prosecutor made the following arguments to the court during the discussion of jury instructions:

> [W]ith the benefit of ... re-examining the statute, re-examining the indictment and considering the evidence that has been presented by the People in this case, there is a theory which is supported in an evidentiary sense by which the defendant could be determined to be a direct perpetrator, and I think that theory centers on the language of "offer to sell."

> \* \* \* \* \* \*

> The defendant is a direct perpetrator with regard to the actual sale, a completed sales transaction.

> \* \* \* \* \* \*

> [W]hat I'm suggesting is not inconsistent with what was originally charged to the jury. The jury was advised of an aiding and abetting theory, and the notion has been all along that the defendant did not personally sell a bond; ergo, had to be found liable if at all, on some vicarious liability.

> \* \* \* \* \* \*

None of the bond representatives for the most part recalled the actual sale to these particular individuals. They testified to their general practices and customs, which in turn bring us back through [Lincoln Savings & Loan President] Fidel back to the defendant in terms of what they were telling people or what they were not telling people more specifically.

\* \* \* \* \* \*

With regard to the Court's query about the evidence showing that the defendant is a direct perpetrator as opposed to running everything through the sieve of being an aider and abettor as it pertains to an offer.

And one thing that the evidence does demonstrate is that it was the defendant who singly was setting the terms of the offer, interest rates in the offer, maturity dates in the offer and that [American Continental Corporation] was promulgating various material in the form of track records, annual reports and the like that were utilized as part of an offer as well as for these individuals.

And I would state in that regard, the bond seller becomes a communicator of that; but it is the defendant again who is the source of the bond.

Trial Transcript, at 6933, 6935, 6937, 6939, 6943–44. The State has failed to overcome the constitutional defect in the direct perpetrator instruction.

### B. *Strict Liability Offense*

Keating argues that his conviction violated due process rights also because it was based on a strict liability offense joined unconstitutionally with a severe prison sentence. As a result of his conviction, Keating was sentenced to ten years in prison and fined $250,-000. The State contends that it need not address this claim because the California Supreme Court found that a criminal violation of section 25401 was not a strict liability offense. Br. on Merits, at 6 n. 4 (*citing Simon, supra*).

Again the State is incorrect. Its obligation to respond to this claim is enhanced as a result of *Simon*. Here, the Court stated that the penalties available for a criminal violation of section 25401 raised a "substantial ques-

tion" as to the statute's validity as a strict liability offense because of the "due process implications." 37 Cal.Rptr.2d at 296, 886 P.2d at 1290. The Court based its holding, that a criminal violation of section 25401 requires proof of mens rea, on its presumption that the state legislature did not intend to enact a statute of "doubtful validity." *Id.* As a result, the Court declined to decide "whether it is constitutionally permissible to impose a criminal penalty of three years or a fine of as much as $10 million ... for omitting to advise a potential investor in a security of facts not known to the issuer to be material, or for making a representation which, unknown to the seller, was not true." *Id.*

Because the direct perpetrator instruction lacked the mens rea element, the jury may have found Keating strictly liable for violating sections 25401 and 25540. Substantial questions are raised therefore whether his due process rights were violated as a result. *See id.* at 297, 886 P.2d at 1291–92.

The Supreme Court has indicated that due process rights may limit the imposition of strict criminal liability, but it has not set forth definite guidelines for ascertaining those limits. *United States v. Engler*, 806 F.2d 425, 433 (3d Cir.1986), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987). According to Supreme Court precedent, strict liability for omissions that are not "per se blameworthy" may violate due process because the actor is not likely to be alerted to the consequences of his deed. *Id.* at 435 (*quoting United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971)). In contrast, due process is not violated if strict liability is imposed as part of "a regulatory measure in the interest of public safety, which may well be premised on the theory that one would hardly be surprised to learn that [the prohibited conduct] is not an innocent act." *Id.* (*quoting Freed*). With respect to sections 25401 and 25540, *Simon* noted that "[e]avesdropping is not one of that class of crimes that affects public health, welfare or safety for which strict liability is most often imposed without any ingredient of intent." *Simon*, 37 Cal.Rptr.2d at 296, 886 P.2d at 1290 (citations omitted).

The Court has already found that the direct perpetrator instruction violates due process because it failed to require a finding of Keating's mens rea. Thus, the Court need not decide whether the instruction violates due process also because of the punishment that flowed from the conviction. Given Supreme Court precedent and the analysis in *Simon*, however, it would not be difficult to find that such was the case.

## II. *The Aiding and Abetting Jury Instruction*

Keating next raises the claim in his petition that the aiding and abetting instruction violated his rights under the United States Constitution. Specifically, Keating argues that the conviction violated his rights to due process and against ex post facto laws because the jury was permitted to convict him of aiding and abetting persons who did not violate the law.

The jury was instructed as follows:

The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include:

1. Those who directly and actively commit the act constituting the crime, or;

2. Those who aid and abet the commission of the crime.

In order to convict a defendant of aiding and abetting another person's violation of Corporations Code sections 25401/25540, you must find with respect to each [of the counts], inclusive, that:

1. An untrue statement of material fact or omission of a material fact was made by bond sellers in connection with the sale of bonds to the bond buyers identified in [each of the relevant counts], inclusive, of the indictment, and;

2. The defendant had knowledge that the bond sellers were making an untrue statement of material fact or omitting a material fact in the sales involved in each count, and;

3. The defendant intended to aid, encourage or facilitate the bond sellers in making an untrue statement of material fact or omitting a material fact in the sales involved in each count, and;

4. The defendant, by act or advice, intentionally aided, promoted, encouraged or instigated the making of the untrue statements of material facts or the omission of material facts.

A person who aids and abets the commission of a crime need not be personally present at the scene of the crime.

Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.

The word "willfully" when applied to the intent which an act is done or omitted means with a purpose or willingness to commit the act or make the omission in question. The word "willfully" does not require any intent to violate the law or to injure another or to acquire any advantage.

The word "knowingly" means with knowledge of the existence of the facts in question. Knowledge of the unlawfulness of any act or omission is not required.

Exh. A, at 33–35, Pet.

### A. *Exhaustion*

The Attorney General contends that Keating failed to exhaust his claim attacking the aiding and abetting theory of liability because the claim presented to this Court is different from that presented to the California Supreme Court. According to the Attorney General,

Keating did not petition the State Supreme Court for review on the grounds that the aiding and abetting theory violated his due process rights because it permitted him to be convicted of aiding and abetting an innocent act. Rather, his complaint with the theory was that the Legislature did not intend aiding and abetting to apply to a section 25401/25540 offense.

Br. on Merits, at 13–14.

 "For reasons of federalism, 28 U.S.C. § 2254 requires federal courts to give the state an initial opportunity to correct alleged violations of its prisoners' federal rights." *Kellotat v. Cupp*, 719 F.2d 1027,

1029 (9th Cir.1983). Section 2254(b) provides:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

28 U.S.C. 2254(b) (1994). Federal courts may not consider claims sought to be presented on federal habeas corpus unless state remedies have been exhausted. *Rose v. Lundy*, 455 U.S. 509, 517–19, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982); *Carothers v. Rhay*, 594 F.2d 225, 228 (9th Cir.1979). In order to exhaust state remedies, the federal contentions must be fairly presented to the state's highest court before relief is sought in federal court. *Anderson v. Harless*, 459 U.S. 4, 5–7, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *Carothers*, 594 F.2d at 228. A claim has not been fairly presented unless the prisoner has described in the state court proceedings both the operative facts and the federal legal theory on which his claim is based. *See Picard v. Connor*, 404 U.S. 270, 275–78, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). "Omitting the best citation is not necessarily the same as omitting the best argument. What is essential, however, is that the state court 'be alerted to the fact that the petitioners are asserting claims under the United States Constitution.'" *Riggins v. McGinnis*, 50 F.3d 492, 493 (7th Cir.1995) (*quoting Duncan v. Henry*, —— U.S. ——, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995)), *cert. denied*, —— U.S. ——, 115 S.Ct. 2621, 132 L.Ed.2d 862 (1995).

██ It is the petitioner's burden to prove that he has exhausted available state remedies. *See Brown v. Cuyler*, 669 F.2d 155, 158 (3d Cir.1982). Failure to exhaust on a single federal claim requires the dismissal of the entire action regardless of whether the remaining contentions have been exhausted. *Rose*, 455 U.S. at 521–23, 102 S.Ct. at 1205.

██ The Court must therefore determine whether Keating fairly presented to the California Supreme Court the constitutional claim raised here. A review of the briefs submitted by Keating in support of his Petition for Review indicates that he did. In the Opening Brief in Support of the Petition for Review, Keating cited the aiding and abetting instruction given at trial, and argued the following:

> The District Attorney's inability to prove that Mr. Keating committed a crime should not be judicially forgiven by creating a new crime—aiding and abetting a violation of Section 25401—tailor made for Charles Keating. The judicial creation of such a new crime is not only inconsistent with the California Corporations Code, it is also prohibited by the United States and California Constitutions, both of which forbid the enactment of ex post facto laws. U.S. Const. art. I, § 10; Cal. Const. art. I, § 9.
>
> The prohibition of ex post facto laws applies both to legislatures and, through the due process clauses of the fifth and fourteenth amendments to the United States Constitution, to courts. *Marks v. United States*, 430 U.S. 188, 193 [97 S.Ct. 990, 993–994, 51 L.Ed.2d 260] (1977). Both the United States and California Supreme Courts have held that novel judicial constructions of existing statutes operate as prohibited ex post facto laws:
>
> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids.... If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a state Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.
>
> *Bouie v. Columbia*, 378 U.S. 347, 353–354 [84 S.Ct. 1697, 1702–1703, 12 L.Ed.2d 894] (1964); *Keeler v. Superior Court*, 2 Cal.3d 619, 634 [87 Cal.Rptr. 481, 470 P.2d 617] (1970).

Exh. A, at 30–31, Traverse. Keating also argued the following in his Reply Brief in Support of the Petition for Review:

[A]s enunciated by this Court, aider and abettor liability requires a direct perpetrator with unlawful intent and an aider and abettor with knowledge of the direct perpetrator's unlawful intent. Both elements were missing in this case. There was no evidence that any of the alleged direct perpetrators had unlawful intent. The State concedes this, stating that the bond sellers had no knowledge of fraud, much less any unlawful intent. And because there was no need to show that the bond sellers had unlawful intent in the context of a strict liability offense, there was no evidence that Mr. Keating had knowledge of their (nonexistent) unlawful intent.

Recognizing the inherent impossibility of aiding and abetting a strict liability offense, the Superior Court simply rewrote the standard aiding and abetting instruction. The Superior Court did not instruct the jury as to the requirement that Mr. Keating must have had knowledge of the bond sellers' unlawful intent. Instead the Superior Court instructed the jury that it must find that Mr. Keating "had knowledge that the bond sellers were making an untrue statement of material fact or omitting a material fact. . . ."

That instruction was contrary to the definition of aiding and abetting outlined by this Court, and effectively created a new offense. The anomaly of the Superior Court's novel instruction illustrates why the California Legislature did not intend to create criminal aider and abettor liability for Section 25401. Criminal aiding and abetting liability is inconsistent with a strict liability offense, where the direct perpetrator does not act with unlawful intent.

Exh. B, at 14–16, Traverse.

In his Report and Recommendation, the Magistrate Judge determined that Keating did in fact raise the contention in his Reply Brief to the California Supreme Court that the instructions improperly allowed the jury to convict him as an aider and abettor without a finding of an unlawful intent on the part of the perpetrator. Report & Recommendation ("R & R"), at 3. The Magistrate

Judge found, however, that this claim was not exhausted because Keating failed to argue that the instruction violated his federal due process rights. R & R, at 3–4. In so finding, the Judge relied on the Supreme Court's decision in *Duncan v. Henry,* ——— U.S. ———, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

The petitioner in *Henry* failed to claim a violation of any federal constitutional rights in the state proceedings. ——— U.S. at ——— – ———, 115 S.Ct. at 887–88. Specifically, the petitioner raised an evidentiary objection in state court and requested the appellate court to find that the error constituted a miscarriage of justice under the California Constitution. *Id.* at ———, 115 S.Ct. at 887. As a result, the state court confined its analysis of his claims to the application of state law. *Id.* at ——— – ———, 115 S.Ct. at 887–88. The petitioner then filed a petition in federal court claiming that the evidentiary error amounted to a denial of due process under the United States Constitution. The Supreme Court held, "If state courts are to be given the opportunity to correct alleged violations of prisoner's federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id.* at ———, 115 S.Ct. at 887.

*Henry* does not change the result reached here. It was not necessary for Keating to invoke the "talismanic phrase 'due process of law' " in the state proceedings, *see Tamapua v. Shimoda,* 796 F.2d 261, 263 (9th Cir.1986), especially since the California Supreme Court has previously recognized that the enactment of ex post facto laws violates federal due process rights. In *Keeler v. Superior Court of Amador County,* the Court stated:

This requirement of fair warning is reflected in the constitutional prohibition against the enactment of ex post facto laws (U.S. Const., art. I, §§ 9, 10; Cal. Const., art. I, § 16). When a new penal statute is applied retrospectively to make punishable an act which was not criminal at the time it was performed, the defendant has been given no advance notice consistent with due process. And precisely the same effect occurs when such an act is made pun-

ishable under a preexisting statute but by means of an unforeseeable Judicial enlargement thereof.

2 Cal.3d 619, 87 Cal.Rptr. 481, 490, 470 P.2d 617, 626 (1970) (*quoting Bouie, supra,* 378 U.S. at 352–55, 84 S.Ct. at 1702–03).

There can be no doubt that the constitutional claim raised here was fairly presented to the California Supreme Court in the briefs filed in support of Keating's petition for review. Thus, Keating exhausted state remedies by giving the California Supreme Court the first opportunity to hear the claim now sought to be vindicated in this Court. *See Picard, supra,* 404 U.S. at 276, 92 S.Ct. at 512–13. Whether or not the State Supreme Court considered the briefs before it dismissed the petition is irrelevant. In *Castille v. Peoples,* the Supreme Court stated:

> It is too obvious to merit extended discussion that whether the exhaustion requirement of 28 U.S.C. § 2254(b) has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court . . .

489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (*quoting Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978)).

### B. *Merits of the Claim*

■ The Court may now reach the merits of the claim. Keating contends that failure to instruct on the direct perpetrator's mens rea violated his federal constitutional rights because the jury was permitted as a result to convict him of aiding and abetting someone who did not violate the law. "There is no question but there must be a guilty principal before there can be an aider and abettor." *United States v. Jones,* 425 F.2d 1048, 1056 (9th Cir.1970), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970). Thus, "[a] defendant cannot be convicted of aiding and abetting absent proof that the underlying offense was committed." *United States v. Bosch,* 914 F.2d 1239, 1241 (9th Cir.1990) (*citing United States v. Powell,* 806 F.2d 1421, 1424 (9th Cir.1986)); *see also United States v. Motley,* 940 F.2d 1079, 1081 (7th Cir.1991) ("It is hornbook law that a defendant charged with aiding and abetting the commission of a crime by another cannot be convicted in the absence of proof that the crime was actually committed.") (reversing conviction under aiding and abetting instruction that did not require finding that underlying offense was committed) (*quoting United States v. Ruffin,* 613 F.2d 408, 412 (2d Cir.1979)). California law also recognizes the principle that "an aider and abettor cannot be guilty of a greater offense than the principal offender." *People v. Williams,* 75 Cal. App.3d 731, 142 Cal.Rptr. 704, 708 (1977) (*quoting People v. Petruzo,* 13 Cal.App. 569, 577, 110 P. 324 (Cal.App.1910)); *People v. Sidelinger,* 9 Cal.App. 298, 299, 99 P. 390 (Cal.App.1908).

Keating specifically contends that, because the aiding and abetting instruction did not require a finding of the direct perpetrator's mens rea, the instruction constituted an unforeseeable judicial enlargement of the California aiding and abetting statute, and thus violated the United States Constitution's ex post facto clause. The United States Constitution prohibits the states from passing ex post facto laws. U.S. Const. Art. I, § 10. The Supreme Court has recognized that a state court's construction of an existing state statute may violate the ex post facto clause:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. . . . If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a state Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

*Bouie v. City of Columbia,* 378 U.S. at 353–54, 84 S.Ct. at 1702–03 (1964); *Keeler,* 87 Cal.Rptr. at 490, 470 P.2d at 626. Thus, "[i]f a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1703; *Keeler,* 87 Cal.Rptr. at 490, 470 P.2d at 627.

There is no doubt that the aiding and abetting instruction failed to require a finding that the bond sellers, as the direct perpetrators, possessed the requisite mens rea to commit criminal offenses under section 25401. Thus, Keating may have been convicted for aiding and abetting acts that were not criminal violations of section 25401. If the jury convicted Keating based on the aiding and abetting instruction, then he was convicted for aiding and abetting where no underlying offense was proven, and he was convicted for a greater offense than the direct perpetrators. This construction of the California aiding and abetting statute is "unexpected and indefensible by reference to the law." *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1703; *Keeler,* 87 Cal.Rptr. at 491, 470 P.2d at 627 (*quoting Bouie*). Keating's conviction therefore violates the ex post facto clause because it may be based on an unforeseeable judicial enlargement of the California aiding and abetting statute.

The Attorney General raises several arguments in response to the claim that the aiding and abetting instruction violated Keating's federal constitutional rights. First, the State asserts that the aiding and abetting instruction was not legally defective. According to the State, "even though the jury did not have the proper instructions to find a direct perpetrator ... guilty of the underlying crime, it certainly had the capability to find petitioner guilty as a principal under California Penal Code section 31." Br. on Merits, at 18.

Section 31 of the Penal Code defines principals as "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present, have advised and encouraged its commission ..." The same liability attaches for any person convicted under section 31. *People v. Montoya,* 7 Cal.4th 1027, 31 Cal. Rptr.2d 128, 134, 874 P.2d 903, 909 (1994) (en banc). The State contends that, because the instruction permits the jury to find that Keating "instigated, promoted and encouraged, his employees to commit the crimes," he was properly convicted under section 31.

Br. on the Merits, at 19. Accordingly, the State argues, "whether [the bond sellers] harbored the requisite mens rea is irrelevant to a determination of petitioner's criminal culpability" because Keating was found to have knowledge of the falsity and misleading nature of the statements being made. Br. on the Merits, at 19.

The State is incorrect. The bond sellers' state of mind is relevant to the jury's determination. If none of the bond sellers harbored a criminal intent, then Keating may be convicted only as a direct perpetrator because then it must be found that he acted through innocent agents. Keating may be convicted as an aider and abettor only if the bond sellers possessed the requisite mens rea. Otherwise, it must be found that he aided and abetted an innocent act, which is not a crime.

■ The Attorney General argues next that Keating's claim fails to present a federal question because it involves interpretation of California's aiding and abetting statute. Br. on Merits, at 14. This argument is totally without merit. If a state construes its own statute in a manner that results in the violation of a defendant's rights under the United States Constitution, a federal question is presented.

Finally, the Attorney General contends that the trial court did not craft a novel theory of criminal liability, but instead, applied long-standing rules of aiding and abetting to sections 25401 and 25540. In support of this contention, the State quotes the Court of Appeal's decision in *Keating*:

> [W]e hold the principle under Penal Code section 31 of aiding and abetting is not new in the instant case, but has been a part of California law for 63 years. Hence, it was not "created" by the trial court, as Keating contends, and therefore the argument that it was ex post facto is unfounded.

19 Cal.Rptr.2d at 917. The State's argument is unavailing. The court's opinion in *Keating* is based on the incorrect premise that a criminal violation of section 25401 does not require mens rea. A prohibition against aiding and abetting crimes has been a part of California law for the past 63 years, but it

has never been a crime to aid and abet an innocent act.

*Conclusion*

Because the State fails to overcome the constitutional defects in both the direct perpetrator instruction and the aiding and abetting instruction, the Court has no alternative, but to GRANT the petition for writ of habeas corpus.

IT IS SO ORDERED.