**William MACK, Petitioner**

v.

**Louis FOLINO et al., Respondents**

**No. CIV.A.04–4058.**

United States District Court,
E.D. Pennsylvania.

Aug. 16, 2005.

Christopher D. Warren, Feldman and Pinto, Dennis J. Cogan, Cogan Petrone & Associates, Philadelphia, PA, for Petitioner.

David Curtis Glebe, Office of the District Attorney, Philadelphia, PA, for Respondents.

## MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

On October 24, 2000, the Honorable Renee Cardwell Hughes of the Philadelphia County Court of Common Pleas found Petitioner William Mack guilty of third degree murder, criminal conspiracy, and possession of an instrument of crime, all related to the death of Anthony DeSilva. Judge Hughes sentenced Petitioner to a term of twenty to forty years of imprisonment for third degree murder, and concurrent lesser terms for the two other offenses. After unsuccessful appeals in the Pennsylvania state courts, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## I. FACTUAL BACKGROUND [1]

On October 2, 1998, Kevin Cooper (Petitioner's co-conspirator) asked Betty Weber whether she had seen DeSilva (a/k/a "Mouse" or "Mousey").[2] Weber hesitated, because Cooper previously had an altercation with DeSilva involving drugs and she was concerned that Cooper may hurt DeSilva. After Cooper assured her that he only wanted to talk to DeSilva, Weber told Cooper that DeSilva was in a house on Judson Street, Philadelphia. She then accompanied Cooper to Judson Street and went inside the house to get DeSilva. DeSilva reluctantly emerged, and eventually Weber joined the two men outside. The three of them walked to DeSilva's house on Hemberger Street. While they were inside the house, someone knocked on the door. Cooper went to the door and returned after a few minutes. He then asked Weber and DeSilva to follow him outside, where Petitioner (a/k/a "Boo") was waiting in a car. DeSilva sat in the front passenger seat, while Weber and Cooper sat in the rear. Petitioner gave Weber two bags of crack cocaine and proceeded to drive around North Philadelphia. He made one stop whereupon he got out of the car for a few minutes. Petitioner drove to Lemon Hill Drive in Fairmount Park, Philadelphia, where he stopped the car. Both Petitioner and Cooper exited the car, and Cooper ordered DeSilva to get out also. DeSilva sat motionless until Cooper opened DeSilva's door and for the second time ordered him to get out.

The three men walked off into the park out of Weber's view. She was smoking her two bags of crack in the back of the car when she heard gunshots. A few minutes later Petitioner and Cooper returned to the car. When Weber asked about DeSilva, Cooper told her that "he wasn't coming back." Petitioner then drove back to North Philadelphia, dropping Weber off at the corner of Somerset and Hemberger Street. Shortly before midnight, Philadelphia traffic police discovered DeSilva's body on the curbside of Lemon Hill Drive.

Weber kept her knowledge of DeSilva's death a secret because she was afraid of what would happen to her if she told anyone. On November 12, 1998, Weber gave a false statement to Philadelphia homicide detectives and then left the Philadelphia area. She subsequently returned and gave a second statement, which, along with

---

**1.** The following summary is based on the factual findings of the trial court, supplemented by the uncontested facts in the record, and is presented in a light most favorable to Respondents Louis Folino, the District Attorney of the County of Philadelphia and the Attorney General of the Commonwealth of Pennsylvania, the verdict winners.

**2.** Cooper was Petitioner's co-defendant in the trial before Judge Hughes.

the results of other investigative efforts by the police, led to the arrest of Petitioner and Cooper.

## II. PROCEDURAL HISTORY

Petitioner and Cooper's bench trial started on February 18, 2000.[3] They did not present any evidence but instead argued that Weber was not a credible witness and that no other evidence established their guilt. Judge Hughes found Weber to be credible and found Petitioner guilty of the above-numerated offenses. Prior to sentencing Petitioner, represented by new counsel, filed a motion for extraordinary relief.[4] The motion requested, *inter alia,* a new trial based on after-discovered evidence that purportedly exonerated Petitioner and implicated others in DeSilva's death. Petitioner relied on a signed statement by Shakenah Johnson, made to a defense investigator after Petitioner's conviction, that Daraan Mosley, the estranged father of Johnson's child, admitted to her on more than one occasion that he had participated in DeSilva's murder.[5]

Judge Hughes held two days of hearings to determine whether Johnson's statement qualified as after-discovered evidence and whether it would be admissible as a declaration against Mosley's penal interest.[6] Mosley was thought to be unavailable; however, on the second day of hearings the Commonwealth produced him, represented by independent counsel. Mosley confirmed that he was the father of Johnson's child and testified that their relationship deteriorated in 1998 because of his inability to provide child support. He then refused to answer any other questions, asserting Fifth Amendment privilege. During a lengthy sidebar discussion with all counsel Judge Hughes decided that for the purposes of determining whether Mosley was "unavailable" (and whether Johnson's statement could be introduced into evidence), it would be sufficient for Mosley to answer one question concerning his statements to Johnson.[7] The question ultimately posed to Mosley, on condition that there would be no follow-up questions and no cross-examination, was whether he "engaged in a conversation on October the 4th, 1998 with Shakenah Johnson about an individual known as Anthony DeSilva, who was also known as Mousey, about his death."[8] After Mosley answered this question in the negative, Judge Hughes declared him available, held Johnson's statement to be inadmissible hearsay, and subsequently denied Petitioner's motion for extraordinary relief. Nonetheless, Judge Hughes urged all counsel to explore the question of Mosley having information that may shed light on the validity of Petitioner's conviction,[9] and granted Peti-

---

3. Defendants waived their right to a jury.

4. Petitioner's trial counsel was Louis T. Savino, Jr., Esq. Dennis Cogan, Esq., represented Petitioner in all post-verdict proceedings and is current counsel of record.

5. On appeal, the pleadings and opinions refer to "Mosely." *But see* N.T. 10/2/00, 7:3–4 (Daraan Mosley's oath). Johnson's statement referred to a conversation between Johnson and Mosley two days after DeSilva's murder and an argument they had while driving on Lemon Hill Drive (at another, unspecified time). *See* Pet.'s Mot. for Extraordinary Relief, Ex. A.

6. *See* Pa. R. Evid. 804(b)(3) (statements subjecting the declarant to criminal or civil liability are admissible as exceptions to hearsay rule if the declarant is unavailable as a witness) (effective October 1, 1998).

7. *See, e.g.,* N.T. 10/2/00 at 24, 26, 45, 60; *see also* Pa. R. Evid. 804(b)(1) (the declarant is unavailable as a witness if the court exempts him from testifying concerning the subject matter of his statement on the ground of privilege).

8. N.T. 10/2/00 at 62.

9. N.T. 10/2/00 at 59.

tioner leave to amend his post-trial motion for extraordinary relief.

Following dismissal of Petitioner's post-sentencing motions as untimely, Petitioner appealed to the Pennsylvania Superior Court.[10] The Superior Court denied his appeal on May 21, 2002. Petitioner then filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on September 10, 2003. Petitioner did not file a collateral appeal pursuant to the Pennsylvania's Post Conviction Relief Act but instead filed the instant Petition on August 25, 2004. Petitioner raises the following three claims:

(1) violation of due process rights based on (i) the trial court's rulings regarding Mosley's availability [as a witness] and its credibility findings, resulting from a flawed procedure utilized by the court during the hearing on Petitioner's motion for extraordinary relief, and (ii) the Superior Court's reliance on speculation in affirming the trial court's actions;

(2) ineffective assistance of trial counsel based on failure to call allegedly exculpatory and alibi witnesses; and

(3) the trial court's error in finding sufficient evidence to support, beyond a reasonable doubt, an inference that Petitioner possessed the requisite intent for a conviction for third degree murder.

The undersigned referred the Petition to Magistrate Judge Peter B. Scuderi for a Report and Recommendation (the "R & R"), and on February 18, 2005, Magistrate Judge Scuderi recommended that the Petition be granted as to claims one and three and denied as to claim two. He recommended granting the writ of habeas corpus unless the Commonwealth gave Petitioner a new hearing on after-discovered evidence, with an opportunity to present testimony and cross-examine witnesses, within 180 days. Respondents have filed objections to the R & R, and Petitioner filed a response. The Court will review the issues raised by Respondents' objections below.

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), effective as of April 24, 1996, "increases the deference federal courts must give to the factual findings and legal determinations of the state courts."[11] AEDPA precludes habeas relief on a "claim that was adjudicated on the merits in State court proceedings" unless the petitioner has shown that the state court proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based

---

**10.** Petitioner raised the following issues in his appeal:

(1) Was the evidence insufficient as a matter of law to sustain William Mack's conviction on any charge?

(2) Was the court's ruling disallowing after-discovered evidence which consists of admissible out-of-court declarations made before and after the killing of the deceased erroneous, and did it deprive the defendant of due process where, as here, the declarations implicate the declarants as killers and exonerate the defendant?

(3) Did trial counsel render prejudicial ineffective assistance to the defendant, requir-

ing a new trial, in failing to call material witnesses; in failing to object to hearsay statements; and in failing to explore Commonwealth's witness Weber's vulnerability regarding potential charges in an unrelated case as a possible motive for fabricating her testimony?

Pet. Brief at 5. Petitioner's Notice of Appeal stated that all of his "claims for relief are raised under both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania."

**11.** *Werts v. Vaughn,* 228 F.3d 178, 196 (3d Cir.2000).

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." [12]

A state court legal determination is "contrary to" Supreme Court precedent if it is "substantially different from the relevant precedent." [13] A state court decision is an "unreasonable application" if (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." [14]

## IV. DISCUSSION

Where a habeas petition has been referred to a magistrate judge for a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." [15] Here, Respondents raise three main objections to the R & R: 1) Petitioner's claim is not reviewable by federal courts because it is procedurally defective; 2) the R & R incorrectly concludes that the procedure utilized by the trial court at the hearing on Petitioner's motion for extraordinary relief violated his basic due process rights; and 3) the R & R incorrectly finds that the trial court's determination of the sufficien-

cy of evidence of Petitioner's guilt was "tainted" by the alleged due process violation. The Court addresses each of the objections below. [16]

### A. Whether Petitioner's Due Process Violation Claim is Reviewable in Federal Court

Respondents argue that Petitioner's first claim is merely an objection to a routine evidentiary ruling of a state court judge involving application of state law, to which he attached a label of a "federal due process [violation]." Respondents further argue that even if the claim is liberally construed as cognizable on federal habeas review, it nonetheless fails because Petitioner did not fairly present it in state courts. The R & R rejected these arguments, noting that: 1) Petitioner clearly challenges the *procedures* utilized by the trial court before making its evidentiary rulings; 2) Petitioner raised this claim on direct appeal; and 3) the Pennsylvania Superior Court explicitly recognized the claim as implicating due process.

#### 1. *Cognizability*

■ As pointed out by Petitioner, his Petition focuses not upon the correctness of the trial court's ruling on the issue of Mosley's availability as a witness, but rather upon a constitutional flaw in the procedure used by the court to make its ruling. Petitioner also argues that the trial court's complete prohibition on cross-examination of Mosley prevented Petitioner from establishing the very issue before the court, i.e.

**12.** 28 U.S.C. § 2254(d). Factual issues determined by the state court are presumed to be correct, and the burden is on the petitioner to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Werts,* 228 F.3d at 196.

**13.** *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**14.** *Id.* at 407, 120 S.Ct. 1495.

**15.** 28 U.S.C. § 636(b)(1).

**16.** Neither party objects to the R & R analysis of Petitioner's claim of the ineffective assistance of counsel, and the R & R's conclusion that this claim is meritless. The Court finds that the R & R correctly summarizes the relevant facts and the applicable legal standards, and adopts the R & R's thorough analysis and conclusions regarding this claim.

whether Mosley was "unavailable" as a witness because he refused to testify regarding the subject matter of Johnson's statement on the grounds of Fifth Amendment privilege.[17]

■ While the Constitution of the United States does not require a State to afford a convicted defendant a procedural vehicle to obtain review of his conviction, where the State creates such a procedure, it must comport with the requirements of the Due Process Clause.[18] It is undisputed that the right to cross-examine witnesses and to present evidence is essential to the traditional and fundamental standards of due process.[19] Given these basic principles, Petitioner's challenge to the procedure used during the post-conviction hearing on his motion for extraordinary relief presents a federally cognizable claim

of a due process violation, and the Court adopts the R & R on this issue.[20]

### 2. Fair Presentation

■ Respondents then argue that Petitioner's claim, even if cognizable on federal habeas review, is procedurally barred because he never "fairly presented" it in state courts. They argue that Petitioner made only passing references to due process in his submissions to the Pennsylvania state courts, and these references were insufficient to merit an opportunity for substantive review.

The doctrine of fair presentation requires the petitioners to exhaust all available state remedies before seeking federal habeas relief by presenting their "federal claim's factual and legal substance to the state courts in a manner that puts them on

---

**17.** As mentioned previously, Johnson's statement that Mosley confessed to participating in DeSilva's murder without Petitioner's involvement was the cornerstone of Petitioner's motion for extraordinary relief.

**18.** See Evitts v. Lucey, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) ("[T]he Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors," but where "a State has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution.") (internal citations omitted); Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (where the state created a right to good-time credit while in prison, prisoner's interest entitles him to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated," thereby making prisoner's claim of due process violation subject to federal habeas review).

**19.** Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); see also Wolff, 418 U.S. at 566, 94 S.Ct. 2963

("[o]rdinarily, the right to present evidence is basic to a fair hearing"); Ford v. Wainwright, 477 U.S. 399, 415, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (holding that "denial of any opportunity [for a criminal defendant] to challenge or impeach" state experts was a constitutional defect in Florida procedure for determining sanity of a death row prisoner).

**20.** Respondents criticize the R & R for "speaking in generalities" and drawing its conclusions based on "broad principles," and points to the fact that a right to question and/or cross examine witnesses is not explicitly set out in Pennsylvania Rule of Criminal Procedure 704(B), which governs motions for extraordinary relief. However, it is hard to find fault with the magistrate judge's reasoning precisely because the principles at issue are so fundamental. Indeed, Respondents concede that the right to cross-examine witnesses is a requirement of federal due process, and later argue that the trial court simply exercised its power to impose reasonable limits on cross-examination. One obvious flaw of this argument is that, as discussed below, the trial court did not merely "limit" Petitioner's right to cross-examine Mosley, but imposed a complete prohibition on any cross.

notice that a federal claim is being asserted."[21] This requirement gives "the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[22] Even if the petitioner's claims do not explicitly rely on a federal right, a claim is exhausted if, for example, the briefs in question describe a claim in "terms so particular as to call to mind a specific right protected by the Constitution."[23]

Here, Petitioner's brief in the Superior Court and his petition for appeal to the Supreme Court specifically referred to deprivation of due process, and both pleadings set out the factual basis for the claim.[24] Petitioner's briefs in the state courts attacked the procedure used by the trial court at the hearing on his motion for extraordinary relief as well as the court's refusal to permit any cross-examination of

Mosley. Petitioner's Notice of Appeal to the Superior Court stated that he was raising all claims under the Constitution of the United States as well as the Constitution of the Commonwealth. Petitioner's submissions in the state courts "alerted those tribunals to the claim's federal quality and approximate contours."[25] Accordingly, Petitioner's federal claim has been fairly presented to the state courts, is thus reviewable in federal court, and the Court adopts the R & R on this issue.

### 3. Standard of Review

■ Respondents argue that the R & R erred in failing to apply the deferential standards of review of AEDPA to Petitioner's due process claim. However, Respondents admit that the Superior Court's analysis of Petitioner's claims dealt solely with issues of state law.[26] Where the state

---

**21.** *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir.1999) (internal citations omitted); *Evans v. Court of Comm. Pleas*, 959 F.2d 1227, 1230 (3d Cir.1992); *see also* 28 U.S.C. § 2254(b)(1)(A).

**22.** *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (internal citations and punctuation omitted).

**23.** *Evans*, 959 F.2d at 1232 (quoting *Daye v. Attorney Gen. of New York*, 696 F.2d 186 (2d Cir.1982)); *see also Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (the petitioner need not cite the "book and verse" of the federal Constitution to fairly present and exhaust his claim in state courts).

**24.** *Cf. McCandless*, 172 F.3d at 262 (claim not fairly presented when the petitioner's briefs in state courts characterized his claim as an evidentiary law challenge and not a violation of a federal or constitutional right: "[n]owhere are terms 'constitution', 'due process' or even 'fair trial' mentioned"); *see also Picard*, 404 U.S. at 271, 92 S.Ct. 509 (for purposes of exhausting state remedies, claim for relief in habeas must reference federal constitutional guarantee and set out facts entitling the petitioner to relief).

**25.** *Evans*, 959 F.2d at 1232 (quoting *Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir. 1989)).

**26.** The record shows that the Superior Court was on notice of Petitioner's deprivation of due process claim. Its opinion even cited the specific portion of Petitioner's brief listing the issues on appeal, including the "due process" violation language. However, in upholding the trial court's ruling on Petitioner's motion for extraordinary relief, the Superior Court relied on state law cases and state law standards governing new trials based on after-discovered evidence, without addressing Petitioner's due process claim on the merits (including the issue of the procedure utilized by the trial court to reach its decision barring admission of Johnson's testimony as inadmissible hearsay). The Superior Court focused on whether Johnson's testimony was of "such a nature that it would compel a different outcome if it had been introduced at trial," and on Petitioner's failure to explain why this testimony "could not have been discovered until after the trial despite reasonable diligence." *Commonwealth v. Mack*, No. 3301 EDA 2000, at 8–10 (Pa.Super.Ct. May 21, 2002) (quoting *Commonwealth v. Small*, 559 Pa. 423, 741 A.2d 666, 673 (1999) (listing conditions warranting a new trial on the basis of after-discovered evidence)).

court does not adjudicate a fairly presented claim on the merits, deferential AEDPA standards of review under 28 U.S.C. § 2254(d) do not apply, and "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact." [27]

■ Alternatively, should the Court find that Petitioner fairly presented a federal claim in the state courts, Respondents argue that fairness commands this Court to find that the state courts have rejected the claim on the merits. Respondents do not cite any legal authority for this interesting proposition. Indeed, it is not clear how one would be able to ascertain whether a state court's silence regarding a particular federal claim presented to it amounts to a denial on the merits and not an omission or failure to address the claim.[28] Nor is it clear why it would be fair to adopt the Respondents' assumption. Therefore, the Court finds that the R & R correctly applied a de novo standard of review to

Petitioner's due process violation claim and adopts the R & R on this issue as well.[29]

## B. Whether the R & R Erred in Finding a Due Process Violation

Respondents argue that Mosley's availability was the threshold issue facing the trial court in relation to determining whether Johnson's statement could be admitted as after-discovered evidence. While Mosley would have been "unavailable" if he refused to answer *all* questions regarding Johnson's statement on the grounds of Fifth Amendment privilege, the trial court found that his answer to the ultimately posed question rendered him "available," made Johnson's statement inadmissible hearsay, and mooted any further questioning.[30] Respondents' overarching argument is that Petitioner's claim is nothing but a challenge to a routine evidentiary ruling by the state trial court.

As stated *supra*, Petitioner objects to the procedure used by the trial court at

**27.** *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001); *see also Bronshtein v. Horn*, 404 F.3d 700, 709 n. 4 (3d Cir.2005).

**28.** *See, e.g., Appel*, 250 F.3d at 210 (finding that Pennsylvania Supreme Court failed to address the petitioner's federal claim of constructive denial of counsel because it re-characterized the claim as alleging only ineffective assistance of counsel).

**29.** Given the basic nature of the legal principles governing Petitioner's due process claim and the complete prohibition on any cross-examination of Mosley, Petitioner's due process claim satisfies the more deferential standards of review under 28 U.S.C. § 2254(d) because the state court's denial of Petitioner's claim on the merits would be an "unreasonable application" of clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

The R & R summarily states that the Superior Court's reliance on Mosley's uncross-examined testimony to uphold the trial court's ruling constituted an "unreasonable determi-

nation of the facts in light of the evidence presented in the State court proceeding," under 28 U.S.C. § 2254(d)(2) standard. *See* R & R at 14 n. 10. Respondents object to this finding, arguing that the Superior Court did not engage in any "determination of facts" and simply analyzed Petitioner's claim of trial error by applying state law principles set forth in *Small*. Since it appears that the R & R confused the two standards under 28 U.S.C. § 2254(d), Respondents' objection is granted. However, as stated above, the Court finds that Petitioner's due process claim satisfies the more deferential 28 U.S.C. § 2254(d)(1) standard.

**30.** Respondents also object to the R & R stating that Mosley "refused on Fifth Amendment grounds to answer *any* questions relevant to the murder," and arguing that Mosley did respond in a declarative fashion to the one question posed to him by the trial court. *See* R & R at 13 (emphasis added). Since the question related to an alleged statement by Mosley regarding the murder, Respondents' objection to the R & R's characterization is correct.

the hearing on Petitioner's motion for extraordinary relief. This procedure, argues Petitioner, violated the basic requirements of due process by imposing a complete prohibition on cross-examination of Mosley, and thereby deprived Petitioner of the opportunity to establish that Mosley was "unavailable" for the purposes of introducing Johnson's statement as evidence.

The right to cross-examine witnesses and present evidence is a basic right guaranteed by the Due Process Clause of the Fourteenth Amendment. "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."[31] Further, where a State creates a procedure for deciding appeals of criminal convictions, the procedure must comport with the Due Process Clause.[32] Here, Pennsylvania law provides that post-conviction but prior to sentencing, a trial judge may hold a hearing on the defendant's motion for extraordinary relief.[33] While the state rule does not mention a right to present evidence and/or cross-examine witnesses during this hearing, the proceeding conducted pursuant to this State-created procedure must comport with the basic requirements of the Due Process Clause.[34]

■ The record reveals that the trial court was very concerned with conducting the hearing on Petitioner's motion for extraordinary relief in a proper and fair manner. Judge Hughes strove to reconcile Petitioner's claim of after-discovered evidence with state law without infringing on Mosley's Fifth Amendment privilege. After ruling that Johnson's statement was inadmissible as a statement against Mosley's penal interest, the trial court stated that it was open to any alternative methods for introducing Johnson's statement into the record as after-discovered evidence.[35] The trial court emphasized that given the stakes on the table, no one involved in the proceedings had any interest in "see[ing] innocent people go to jail."[36] However, the procedure employed by the trial court at the hearing, and specifically the complete prohibition on any cross-examination of Mosley, was constitutionally flawed because it violated the basic requirements of the Due Process Clause. This procedure prevented Petitioner from establishing that Mosley was "available" as a witness under Pennsylvania state law, which was a necessary precondition for the admission of Johnson's testimony.[37]

---

31. *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *see also* *Wolff*, 418 U.S. at 558, 94 S.Ct. 2963 (the "fundamental requisite of due process of law is the opportunity to be heard").

32. *Evitts*, 469 U.S. at 393, 105 S.Ct. 830.

33. Pa. R.Crim. P. 704(B).

34. *See, e.g., Ford*, 477 U.S. at 415, 106 S.Ct. 2595.

35. *See, e.g.*, N.T. 0/02/00 at 5.

36. N.T. 10/02/00 at 59.

37. *See* Pa. R. Evid. 804(b). While the correctness of the trial court's evidentiary ruling is not the focus of the Petition, the ultimate question posed to Mosley to determine his "availability" was extremely narrow. Johnson's statement referred to two separate occasions on which Mosley allegedly confessed to participating in DeSilva's murder. Under Pennsylvania law, the declarant's statement against his penal interest is admissible as evidence if the declarant is unavailable, which includes situations where the court exempts the declarant from testifying concerning the subject matter of his statement on the ground of privilege. *See id.* The trial court originally defined the issue before it as hinging on whether Mosley "at any moment in time" told Johnson that he was involved in DeSilva's murder. *See, e.g.*, N.T. 10/02/00 at 24, 26, 30. The question the trial court eventually asked Mosley was whether he "engage[d] in a con-

Respondents finally argue that the right to cross-examine witnesses, while a requirement of federal due process, may be reasonably limited by trial judges for legitimate and practical reasons. They state that such reasons were present here because any additional questioning of Mosley (1) lacked relevancy once the issue of his "availability" was established, and (2) would have been a waste of time because Mosley's counsel informed the court that his client would assert Fifth Amendment privilege in response to any other substantive questions. Yet in this case Petitioner's right to cross-examine was not just limited; it was curtailed in its entirety. Additionally, cross-examination may have established whether Mosley intended to assert his Fifth Amendment privilege in response to questions concerning the subject matter of his statements to Johnson. This may have led to a different ruling by the trial court on the issue of Mosley's availability, rendering Johnson's testimony admissible. Therefore, cross-examination of Mosley on the subject matter of his alleged statements would have been both relevant and useful, and the Court adopts the R & R's finding of a constitutional violation resulting from complete denial of cross-examination at the hearing on Petitioner's motion for extraordinary relief.

█ The R & R then discusses whether the constitutional defect in the procedure employed at the hearing triggers automatic reversal or whether harmless-error analysis applies.[38] Neither party presents specific objections to this analysis or to the R & R's conclusion that in light of the circumstances of this case, the error was not harmless beyond a reasonable doubt.[39] The Court will adopt the R & R on this point after a *de novo* review. The R & R, in finding that the due process defect was not harmless error applied the factors enunciated in *Van Arsdall* such as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." [40]

The R & R correctly pointed out that the evidence against Petitioner in this case was entirely circumstantial and the prosecution's case rested almost entirely on the testimony of one witness, Weber, who admitted to initially giving a false statement

versation with Shakenah Johnson on October 4, 1998... about the death of Anthony DeSilva also known as Mousey." N.T. 10/02/00 at 60.

First, this question does not take into account the part of Johnson's statement referencing a second occasion on which Mosley allegedly referred to participating in DeSilva's murder. Second, this question concerns the subject matter of *Johnson's* statement—and not Mosley's, the declarant witness asserting the privilege. However, the subject matter of *Mosley's* alleged statements is his involvement in DeSilva's murder, not his conversation(s) regarding same with Johnson. In this instance, the prohibition on cross-examination prevented Petitioner from exploring Mosley's availability and specifically whether Mosley intended to assert a Fifth Amendment privi-

lege regarding the subject matter of his alleged statements.

38. *See Lewis v. Pinchak*, 348 F.3d 355, 357–58 (3d Cir.2003) ("structural defects" requiring reversal are found in limited number of cases, such as total deprivation of right to counsel, lack of impartial trial judge, and denial of self-representation at trial; vast majority of constitutional "trial errors" require a harmless error analysis).

39. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (subjecting erroneous exclusion of evidence in violation of Sixth Amendment right to confrontation to harmless error analysis).

40. *Id.*

to homicide detectives and lying to several judges in the proceedings at hand. Furthermore, Weber did not see DeSilva's murder or the murder weapon, and was smoking crack cocaine in the car at the time of the murder. Johnson's statement is not cumulative testimony and, if admitted into evidence, would contradict Weber's testimony on several material points. Additionally, the trial court recognized that if it found Mosley to be "unavailable," Johnson's statement—if the trial court found Johnson to be credible—would "eviscerate" the court's original verdict [finding Petitioner guilty].[41] Here, as a result of the procedure employed at the hearing, the trial court's credibility determinations regarding Mosley and Johnson rested on uncross-examined testimony of Mosley and on Johnson's written statement. Given these considerations, the constitutional defect in question is not harmless error, and the R & R is adopted on this point.

### C. Whether the R & R Erred in Deciding That the Trial Court's Findings Regarding Sufficiency of Evidence Were Tainted by the Due Process Violation

Petitioner also challenged the sufficiency of evidence of his guilt. The R & R notes that the state courts applied the proper legal standard to the relevant trial evidence.[42] However, the R & R further states that the due process defect identified earlier "potentially tainted the trial court's evidentiary and credibility determinations." Respondents object to this conclusion, first on the basis that no due process violation has occurred here, and second because the due process violation is unrelated to Petitioner's sufficiency claim.

What the R & R means by the statement referenced above is unclear, especially as the statement is not supported by any analysis or legal authority. The R & R does not find that the state courts engaged in an unreasonable application of the Jackson standard or its state equivalent, and the record does not support such a finding.[43] Accordingly, the Court will grant Respondents' objection to the R & R's recommendation that a writ of habeas corpus be granted on the basis of his insufficiency of evidence claim and reject the R & R on this issue.

## IV. CONCLUSION

There is no relief available to Petitioner that would remedy the due process violation short of a new hearing on the question of after-discovered evidence. Accordingly, the Court will issue the writ of habeas corpus unless Respondents grant Petitioner such a hearing, including a meaningful opportunity for Petitioner to cross-examine witnesses and present testimony, with-

---

41. N.T. 10/02/00 at 43.

42. Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (in reviewing challenges to sufficiency of evidence the court must determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Pursuant to the AEDPA a writ of habeas may be issued for evidentiary insufficiency only if the state courts have unreasonably applied either the Jackson "no rational trier of fact standard," or the state equivalent of the Jackson standard. Smith v. Vaughn, No. Civ. A. 96–

8482, 1997 WL 338851, at *7 (E.D.Pa. June 17, 1997). While the Pennsylvania Superior Court did not explicitly mention the Jackson standard, it reviewed the trial court's findings and found that the evidence was sufficient to establish Petitioner's guilt beyond a reasonable doubt for all three offenses.

43. Respondents argue that the only issue relevant to a sufficiency claim is whether the verdict was justified by the evidence before the trial court, and a constitutional violation arising out of a post-trial procedure does not invalidate any particular piece of trial evidence. Petitioner's Reply does not address this issue.

in 180 days from this Order. The remainder of Petitioner's claims for relief are denied.

An appropriate Order follows.

### ORDER

**AND NOW**, this 16th day of August, 2005, upon careful and independent consideration of all of the pleadings and the entire record, and after review of Magistrate Judge Peter B. Scuderi's Report and Recommendation dated February 18, 2005 [Doc. # 10], Respondents' Objections thereto [Doc. # 14], Petitioner's Reply [Doc. # 19], and for the reasons set forth in the attached memorandum opinion, it is hereby **ORDERED** as follows:

1. The Report and Recommendation is **ADOPTED IN PART** and **REJECTED IN PART**;

2. The Report and Recommendation's analysis of Petitioner's claim of due process violation and a finding of a due process violation are **ADOPTED**;

3. The Report and Recommendation's analysis of Petitioner's claim of insufficiency of evidence and a finding of a taint resulting from the due process violation are **REJECTED**;

4. The Report and Recommendation's analysis of Petitioner's claim of ineffective assistance of counsel and a finding that this claim is meritless are **ADOPTED**;

5. Petitioner William Mack's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 is **GRANTED**;

6 Petitioner shall be released from custody pertaining to his conviction on the charges of third degree murder, criminal conspiracy and possession of an instrument of crime, unless within 180 days from this Order the Commonwealth grants Petitioner a new hearing on after-discovered evidence, including a meaningful opportunity to present testimony and cross-examine witnesses, if requested;

7. This Order is **STAYED** pending any appeal;

8. The Clerk of the Court shall **CLOSE** this case for statistical purposes.

It is so **ORDERED**.